**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jefferson D. ROSS, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Elmer WYNN, Defendant-Appellant.**

**Nos. 26152, 26153.**

United States Court of Appeals, Ninth Circuit.

March 29, 1971.

Rehearings Denied April 21, 1971.

Frank O. Bell, Jr. (argued), of Goorjian & Bell, San Francisco, Cal., for Jefferson D. Ross.

James F. Hewitt (argued), The Legal Aid Society, San Francisco, Cal., for Charles Elmer Wynn.

John G. Milano (argued), Asst. U. S. Atty., James L. Browning, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and TRASK, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

In the late evening of September 27, 1968, aboard the S. S. Chatham, a vessel anchored in the harbor of Nha Trang, South Vietnam, Karl Von Rodenstein was severely beaten and narrowly averted being thrown overboard. A jury found appellants Ross and Wynn to have been the perpetrators of these vicious acts and pronounced them guilty of assault with intent to commit murder, a violation of 18 U.S.C. § 113(a). We are satisfied there is substantial evidence to support the jury's verdict. For this reason and because resolution of this appeal does not require a factual analysis of the crime, we deem it unnecessary to recite the gruesome details of the brutal beating inflicted on Von Rodenstein.

Appellants contend they were denied due process of law and the right to a speedy trial because by the time the indictment was returned some eleven months after the commission of the offense, the one witness who could have planted the seed of doubt as to Von Ro-

---

* Honorable William M. Byrne, United States District Judge, Los Angeles, California, sitting by designation.

denstein's veracity (and thus persuaded the jury to discount Von Rodenstein's testimony that appellants initiated the assault in his cabin) had been lost at sea one month earlier. According to the appellants, the death of the Chatham's master, Harry Pearce, denied them the opportunity to demonstrate that Von Rodenstein was a disruptive influence and thus many of his shipmates "had reason to assault him". In the view of the appellants, "the indictment should have been dismissed, or a judgment of acquittal should have been granted", because of the "obvious prejudice" resulting from the "unjustified delay" in the indictment's return.

■ The assertion that the death of Pearce prior to the return of the grand jury indictment denied appellants the opportunity to raise the "reasonable possibility" that other crew members had sufficient motivation to assault Von Rodenstein is patently absurd. Although appellants claim on appeal that Von Rodenstein was a source of perpetual irritation to his shipmates, at the trial they chose not to call even one member of the crew who might corroborate this allegation. Instead, appellants limited their proof to the following letter written by Pearce to the Provost Marshal at Nha Trang, which was introduced into evidence over the vociferous objection of the government:

"Respectively request that Ex-Acting First Assistant Engineer Karl Von Rodenstein, be held in custody, until this ship sails, and/or action by the United States Consul.

"This man has consistently used profane and abusive language toward his superior officers and his subordinates. He has also threatened the Master with bodily harm. He performs no duties.

"In view of these circumstances, it is imperative that this man be removed from this vessel, for the vessel's continued safe operation and for his own personal protection.

"Furthermore, request that this man be given a complete physical and if possible, mental examination, as to his competence to perform his duties. At present he has an unfit for duty slip, issued by a Doctor in Honolulu. He has flatly refused a medical examination in the port of Cam Ranh.

"This man is a disruptive and mutinous influence aboard this ship."

Since the jury was exposed to Pearce's impressions of Von Rodenstein, it is difficult for us to fathom how his death prior to the return of the indictment truly prejudiced the appellant's defense. It appears the death of Captain Pearce has been used as a convenient prop to a claim of prejudice. See United States v. Halley, 431 F.2d 1180, 1182, (9th Cir. 1970) where this court rejected the defendant's claim that he had been denied his Sixth Amendment right to a speedy trial because of a seventeen month interval between the time he became a suspect and the time the grand jury indictment was returned:

" * * * The charge was filed well within the statute of limitations. Halley does not show how he was prejudiced by this delay, nor does he show that the delay was due to oppressive or culpable Government conduct."

See also, Kroll v. United States, 433 F.2d 1282 (5th Cir. 1970); Fleming v. United States, 378 F.2d 502 (1st Cir. 1967).

■ The offense for which appellants were found guilty of having committed occurred aboard the vessel "Chatham", which was anchored in the harbor of Nha Trang, South Vietnam. In its anchored state the "Chatham" was approximately ten to fifteen minutes from shore by way of motor launch. These facts satisfy us that at the time of the offense's commission, the "Chatham" was on the "high seas". United States v. Flores, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933); United States v. Rodgers, 150 U.S. 249, 14 S.Ct. 109, 37 L.Ed. 1071 (1893); Nixon v. United States, 352 F.2d 601 (5th Cir. 1965). Accordingly, the only serious question as to this case being within the special maritime jurisdiction

of the United States[1] is whether the "Chatham" was a registered vessel of the United States.

At the trial, Frank Oda, Chief of Marine Documents, United States Coast Guard, produced a volume entitled *Merchant Vessels of the United States*. According to Oda, this book, which is published by the Coast Guard, is "a compilation of all the vessels documented and owned by citizens or corporations of the United States". Oda testified that the "S. S. Chatham" was listed in this official government publication. Oda also testified that "in order to be registered as a vessel of the United States, eighty five percent of the stockholders must be citizens of the United States. * * * "

Further proof of United States registry was established by the testimony of George Kohl, the "Chatham's" third assistant engineer. According to Kohl, the "Chatham" flew the American flag as it carried its shipload of rice.

■ Establishment of the "Chatham's" registry by way of the testimony of Oda and Kohl closely parallels the situation in St. Clair v. United States, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894). There, a certificate of registry and evidence that the vessel "Hesper" "carried the American flag" was deemed sufficient to make out "a *prima facie* case of proper registry under the laws of the United States, and of the nationality of the vessel and its owners." 154 U.S. at 151, 14 S.Ct. at 1009. Here, the nature of the official government publication coupled with the corroborating evidence concerning the American flag satisfy us that the requirement to bring this case within the "special maritime jurisdiction of the United States" have been met.

■■ As an adjunct to their jurisdiction claim, appellants also urge that venue did not lay in the Northern District of California. We find this portion of appellants' attack totally free of legal and factual realities. Title 18 U.S.C. § 3238 provides that an offense committed on the high seas may be prosecuted in a district where "any one of two or more joint offenders, is arrested or is first brought; but if * * * not so arrested or brought * * * an indictment or information may be filed in the district of the last known residence of * * * any one of two or more joint offenders * * *." Here, it is clear that appellants were not "first brought" to Hawaii as claimed by appellants. Appellant Ross testified that their civilian flight from Vietnam to Hawaii was absent any form of on board restraint. See, United States v. Provoo, 215 F.2d 531 (2d Cir. 1954); Chandler v. United States, 171 F.2d 921 (1st Cir. 1948), cert. den. 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081 (1949); Kerr v. Shine, 136 F. 61 (9th Cir. 1905). Upon alighting in San Francisco from their unrestrained commercial flight from Hawaii, appellants were subpoenaed to appear before a Coast Guard hearing called to review their licenses in light of the events which had occurred aboard the "Chatham". During the course of these hearings, the grand jury's indictment was returned and Ross was arrested.

The City of San Francisco was certainly familiar to appellant Ross. He admitted that he had lived there "off and on for years" and that he "had sailed out of" that city "for a good many years". Despite these admissions, Ross maintained that San Francisco was not the situs of his "official residence".

---

1. 18 U.S.C. § 7, provides in pertinent part:
   "The term 'special maritime and territorial jurisdiction of the United States', as used in this title, includes:
   "(1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State."

It can be readily seen that the provisions of 18 U.S.C. § 3238 have met with compliance. One of the appellants was arrested in the district where the trial was conducted. The testimony of that appellant indicated that he was a resident of the district. The "off and on" nature of this residence is perfectly consistent with his sailing vocation. It is somewhat significant that appellant Ross was unable to name his true "official residence" while he maintained that it was not San Francisco. In sum, we find nothing in the record which indicates that venue was not proper in the Northern District of California.

Finally, we have reviewed the record aware of appellants' contention that the trial court improperly limited the scope of their cross examination, thus denying them their Sixth Amendment right to confrontation. We are satisfied that no such right was denied to appellants by the lower court. For this reason and those previously stated, the appellants' convictions are

Affirmed.