UNITED STATES of America, Plaintiff,

v.

Laurence John LAYTON, Defendant.

No. CR–80–416 RFP.

United States District Court,
N. D. California.

March 18, 1981.

G. William Hunter, U. S. Atty., Stanford Svetcov, Robert L. Dondero, Asst. U. S. Attys., San Francisco, Cal., for plaintiff United States.

James F. Hewitt, Federal Public Defender, Frank O. Bell, Jr., Chief Asst. Federal Public Defender, Tony Tamburello, San Francisco, Cal., for defendant Laurence John Layton.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

Laurence J. Layton, a. k. a. Larry Layton, has been indicted on four counts arising from the events which occurred at Port Kaituma airport in Guyana on November 18, 1978. Those events led to the killing of Congressman Leo Ryan and the wounding of Richard Dwyer, Deputy Chief of Mission for the United States in the Republic of Guyana.

On October 9, 1980, an indictment was filed which charges Mr. Layton with (1) conspiracy to murder a Congressman (18 U.S.C. § 351(d)); (2) aiding and abetting in the murder of a Congressman (18 U.S.C. §§ 351(a), 2; (3) conspiracy to murder an internationally protected person (18 U.S.C. § 1117); and (4) aiding and abetting in the attempted murder of an internationally protected person (18 U.S.C. §§ 1116(a), 2). At the time this indictment was filed, Mr. Layton was in prison in Guyana pending the resolution of charges brought against him in that country. The indictment was filed in the Northern District of California, which was the district of Mr. Layton's last known residence in the United States. 18 U.S.C. § 3238. On or about November 20, 1980, Mr. Layton was released from prison in Guyana and taken into the custody of F.B.I. agents there. He was then brought, in custody, to San Francisco via New York. During a stopover in New York, Layton was removed from the airplane and arraigned. Immediately thereafter, he was brought to San Francisco to face trial on the instant charges.

The government, invoking 18 U.S.C. § 3238, asserts that venue is proper in this district. Section 3238 provides:

The trial of all offenses begun or committed on the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment may be filed in the District of Columbia.

The government reads the two major clauses of this section in the disjunctive. Under its reading, if an indictment is filed before the offender is arrested in this country, or brought into this country, it may be filed in the district of the offender's last known residence and the first clause of the statute becomes inoperative: the trial is to be held in the district in which the indictment was filed, rather than in the district where the offender is subsequently "arrested or first brought." Defendant, on the other hand, reads the two clauses in the conjunctive, arguing that even though an indictment may be filed in the district of the offender's last known residence, the *trial* must always be held where the offender is arrested or first brought. It is conceded—and indeed, it is indisputable—that Mr. Layton was "first brought" to the Eastern District of New York. It is quite clear that the phrase "first brought" as used in section 3238 means "first restrained of his liberty in connection with the offense charged." *See, e. g., U. S. v. Erdos,* 474 F.2d 157 (4th Cir. 1973); *U. S. v. Ross,* 439 F.2d 1355 (9th Cir. 1971). It is also conceded that Mr. Layton's last known residence in the United States was in the Northern District of California.

Although section 3238 is not drafted with the utmost lucidity, this court believes that the government's interpretation is more plausible than defendant's. This is a question of first impression in this and every other circuit. Only one court has confront-

ed a similar situation, in which an indictment was filed before the defendant returned to this country, in the district of his last known residence, and the defendant was subsequently "first brought" to a different district. In that case, the court stated that venue for trial was proper under section 3238 in the district of the defendant's last known residence, where the indictment was filed. *U. S. v. Hay*, 376 F.Supp. 264, 268 n.2 (D.C.Colo.1974); *aff'd*, 527 F.2d 990 (10th Cir. 1975); *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176. That statement, however, was made in a footnote and without any discussion.

Both the defendant and the government rely on *U. S. v. Ross*, 439 F.2d 1355, 1359 (9th Cir. 1971), *cert. denied*, 404 U.S. 1015, 92 S.Ct. 686, 30 L.Ed.2d 661 (1972). Unfortunately, however, that case provides little guidance. In *Ross*, the court found that the place where one of the defendants was first arrested was the district in which the indictment was filed, and which, in turn, was the last known residence of at least one of the two joint offenders. Hence, the court was not faced with the conflict with which we are faced in the instant case. Under the facts of *Ross*, the government's and the defendant's interpretation of section 3238 would both lead to the same result. We must therefore rely primarily on the very scanty legislative history of section 3238 and its 1963 amendment.[1]

Before the 1963 amendment, section 3238 provided only that "The trial of all offenses begun or committed on the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought." This section was enacted in 1948 as part of a massive revision of the Criminal Code. Section 3238 was apparently utterly noncontroversial because no comments relating to this particu-

lar section appear in the Congressional Record. The apparent purpose of the section, however, is simply to provide an arbitrary rule of venue for offenses committed outside of the United States. We can only speculate as to why Congress chose to lay venue in the district where the offender is first brought or arrested, rather than in some other district (*e. g.*, the offender's last known place of residence). A possible reason is that Congress believed that, once the criminal process has been invoked by an arrest or by bringing the offender into this country in custody, it is sensible and natural to proceed to indictment and trial in the same district, rather than to interrupt the process in order to transfer the defendant to another district.

In 1963, the statute was amended and the current wording was adopted. According to the Senate Report, the purpose of the 1963 amendment was twofold. First, under the former provision, joint offenders must be tried separately if found in separate districts. The 1963 amendment made it possible to try joint offenders in any district where one of them was found. Congress wished to avoid the significant expense of separate indictments and separate trials when joint offenders are found in separate districts.

The second purpose—the one accomplished by the provision for filing an indictment in the district of the offender's last known residence—was to prevent the running of the statute of limitations where an offender remained abroad but was not clearly a fugitive. The Senate Report states:

Illustrative of the situation which the second purpose of this legislation is designed to reach is the case of an American citizen who stole Government property abroad and remains abroad so as to make it impossible to undertake criminal

---

1. In one other case involving similar facts, the case was transferred from the district where the indictment was filed (the Northern District of California) to the district where the offender was first brought (the District of Hawaii). In that case, however, the Court of Appeals simply recited that the district court in California had granted a motion to change venue to the District of Hawaii. We are not told the basis for the motion to change venue, and section 3238 is not cited in this portion of the opinion. *U. S. v. Cotten*, 471 F.2d 744, 745–46 (9th Cir. 1973), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973).

prosecution because *venue is not established* under any statute until he is either brought to the United States or found in the United States. In the meantime, unless the prosecution can demonstrate that he is a fugitive, the statute of limitations may run before criminal proceedings against him could be instituted. The instant legislation would correct this situation by making it possible to file an indictment or information in the case of such an offender in the district of his last known residence or in the District of Columbia if such residence is not known.

*See* U.S.Code Cong. and Admin.News, 1963, 660, 661 (emphasis added).

■ Nothing in the Senate Report, however, is any more precise than the statute itself as to whether the *trial* of charges filed pursuant to the new clause of the statute must still take place in the district to which an offender is subsequently "first brought." Such a rule would represent a sharp deviation from the ordinary rule, in which an indictment is proper only if filed in a district where venue *for trial* is proper. *See* 8A *Moore's Federal Practice* ¶ 18.02[1]. We believe that, had Congress intended to make a rule so at odds with the common understanding of the consequence of a proper indictment—i. e. that a trial in the same district is also proper—it would have unambiguously done so.

■ Defendant urges that questions of venue implicate important issues of public policy in light of which legislation must be construed. In this case, however, no public policy suggests that Congress intended that venue should lie in the district where the offender was "first brought" once an indictment has been returned in the district of his last known residence. As noted above, the original purpose of section 3238 was simply to provide an arbitrary rule of venue for offenses committed outside of the United States. The place of venue seems to have been arbitrarily fixed at the place where the criminal process is first set in motion.

When the statute was amended in 1963, Congress provided a means of setting that process in motion earlier than had formerly been permitted—that is, by filing an indictment in the district of his last known residence even though the offender has not yet been found in or brought to this country. There appears no reason why Congress would want to interrupt the proceedings, once begun, to move them to the district where the defendant later happened to be brought. Such a system would impose needless expense and inconvenience on the government, and much duplication of labor, on the part of prosecuting attorneys, without any increase in convenience to the defendant.[2]

In the instant case, for example, prosecuting attorneys in this district have expended an enormous amount of effort to familiarize themselves with the evidence in order to present it to the grand jury. If the case were transferred to New York, new prosecutors would have to duplicate this effort in order to prepare the case for trial. Furthermore, the defense attorneys who were appointed under the Criminal Justice Act and compensated with government funds, and who have also spent a considerable amount of time preparing for the trial of these charges, might also have to be replaced if the case were transferred to New York. Such a waste of resources would further no public policy. It is interesting to note, moreover, that judicial economy and simplicity were clearly a congressional purpose of the 1963 amendment to section 3238 in so far as it permitted joint offenders to be tried in any district where *one of them is found.* It seems highly unlikely that Congress intended to eliminate the need for some unnecessarily expensive and burdensome procedures and at the same time intended to establish the unnecessarily expensive and burdensome system which defendant suggests.

It is true that the first clause of the statute refers to "the trial," while the

---

**2.** The defendant in the instant case has not suggested any way in which it would be more convenient or in any other way advantageous for him to be tried in the Eastern District of New York, where he was first brought, rather than in the Northern District of California.

second refers to "an indictment." It seems, however, that this difference in wording came about because the two clauses were primarily directed at two different problems. The first clause contemplates the situation where the offender is already in the United States and his whereabouts are known, either because he has been brought to the United States or because he has been "found" in a district. When it enacted the first clause, Congress was not focused on the problem of tolling the statute of limitations but, instead, it intended simply to fix the district where criminal proceedings should take place. It may have used the word "trial" in order to track the language of Article III, Section 2, Paragraph 3 of the United States Constitution, which provides that when an offense is not committed within any state "the trial shall be at such place or places as Congress may by law have directed." In any case, there was no reason to make specific mention of the indictment, because when Congress assigned venue by using the word "trial," no one could reasonably have doubted that an indictment should be filed in the same district where trial venue was fixed.

The second clause, on the other hand, contemplates the situation where an offender's whereabouts are unknown or he remains out of the country, and the immediate problem is to prevent the running of the statute of limitations by filing an indictment. The primary problem sought to be addressed by the second clause of the statute, as described by the Senate Report, was that venue was not established so no indictment could be filed. *See* 1963 *Cong. and Admin.News* 661, *supra* at 5. This time, Congress assigned venue by providing a place where "an indictment" could be filed, because the filing of an indictment was central to its primary purpose of providing a means of tolling the statute of limitations. It could as easily have used the word "trial," which would surely—as in the first clause—have permitted the filing of an indictment in the same district, but use of the word "trial" would not have highlighted Congress's primary purpose. Therefore, this court does not believe that Congress, in using the word "indictment" to assign venue, intended to produce the extraordinary and uneconomical result suggested by defendant. Since this difference in wording appears to be insignificant, the words "but if," which preface the second clause, can only be read as making an exception to the first clause.

For the foregoing reasons, this court reads section 3238 as laying venue for both indictment and trial in the district of the defendant's last known residence, where, as here, the indictment is returned before the defendant is found in or brought to this country. Accordingly, defendant's objection to the venue of this court is overruled.

SO ORDERED.