UNITED STATES of America,

v.

Darrell Walter HOLMES, Defendant.

Criminal Action No. 4:08cr134.

United States District Court,
E.D. Virginia,
Newport News Division.

Dec. 4, 2009.

Lisa Rae McKeel, United States Attorney's Office, Newport News, VA, United States of America.

Larry Mark Dash, Office of the Federal Public Defender, Norfolk, VA, for Defendant.

## ORDER

ROBERT G. DOUMAR, District Judge.

In denying Defendant's Motion to Dismiss for lack of venue, the Court finds that it was in error. More specifically, the Court feels it wrongly concluded that the Eastern District of Virginia is a proper venue for this prosecution. The Court realizes that decisions proffered from the Bench would have been better made upon more thoughtful consideration. When the Court errs, it feels it should promptly correct itself when it can. Fortunately, the case is still pending in this Court, and therefore, the Court now reverses, in part, its earlier ruling of April 16, 2009 and Order of May 22, 2009. For the reasons set forth below, the Court finds the Eastern District of Virginia is not the proper venue for this particular prosecution; accordingly, the Court **VACATES** its prior Order of May 22, 2009 and Defendant's Motion to Dismiss for lack of venue is **GRANTED** without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to this case are set forth more fully in the Court's previous Order of May 22, 2009. *See United States v. Holmes,* 618 F.Supp.2d 529 (E.D.Va. 2009). To summarize briefly, Defendant, while stationed at Yokota Air Force Base in Japan, sexually molested his stepdaughter on two occasions sometime between 1999 and 2002. Following his assignment to Japan, Defendant remained on active duty in the United States Air Force and was eventually stationed at Langley Air Force Base in Hampton, Virginia. After a brief deployment to Qatar in January 2007, Defendant returned to Langley Air Force Base on May 20, 2007 whereupon he was interrogated about the sexual molestation allegations made by his stepdaughter. It is important to note that Defendant returned to the United States under no form of restraint or custody. Therefore, it cannot be said that Defendant was "first brought" into the Eastern District of Virginia when he returned from his deployment in Qatar, regardless of whether the Air Force or the United States Attorney's Office intended to investigate the sexual molestation allegations made against Defendant.

After admissions concerning the alleged sexual molestation were made by Defendant, the Air Force ordered a general court-martial of Defendant for a criminal violation of Article 125 of the Uniform Code of Military Justice ("UCMJ") on July 19, 2007. Article 125, a charge of sodomy, provides:

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.

10 U.S.C. § 925. As set forth by the Manual for Courts–Martial, a conviction under Article 125 requires proof of the following essential elements:

(1) the accused engaged in unnatural carnal copulation with a certain other person . . . , and

(2) the act was done with a child under the age of twelve.

*Manual for Courts–Martial* (2000, 2005, 2008 eds.).

The Defendant, through his counsel, moved to dismiss the charges on the grounds that the statute of limitations barred the action. Before proceeding to

trial, the presiding law officer (the judge) delayed for eight months Defendant's court-martial, pending the decision of the Court of Appeals for the Armed Forces ("CAAF") in *United States v. de Victoria,* 66 M.J. 67 (2008), *reconsideration denied by* 66 M.J. 369 (2008), as the ruling would be dispositive on the contested issue of the statute of limitations. In *de Victoria,* the CAAF ruled that a 2003 amendment which extended the five-year statute of limitations of the applicable UCMJ provision did not apply retroactively. The law officer stated that he would rule on the matter on March 14, 2008 since trial was set for March 25, 2008.

Based on the ruling in *de Victoria,* it became clear that the court-martial's charge against Defendant was in violation of the statute of limitations.[1] Consequently, on March 13, 2008, one day before the law officer was set to rule on Defendant's Motion to Dismiss for Expiration of Applicable Statute of Limitation, the Air Force's Convening Authority dismissed the case. This dismissal was supposedly "without prejudice." On March 24, 2008, notwithstanding the previous letter of dismissal, the Convening Authority entered another letter, back-dated March 13, 2008, stating that it "withdrew and dismissed" the charge without prejudice. This Court assumes the back-dated letter to be a substitute for the original letter of dismissal dated March 13, 2008 in order to add the word "withdraw."

When this Court learned of the dismissal, it required the correspondence of the Convening Authority so that it might ascertain why the charge was dismissed, as neither the letters of March 13 nor March 24 provided an explanation. Rather than produce such correspondence, the Government submitted that the court-martial was dismissed because the statute of limitations had expired.

On April 15, 2008, a Federal Grand Jury sitting in Newport News indicted Defendant and charged him with two counts of aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 7 and 2241(c), which are exactly the same charges in this Indictment.[2] On May 21, 2008, however, the Government moved to dismiss the original indictment after it became clear that the Government was precluded from pros-

1. In its filings, the Government and Defendant state that the Uniform Code of Military Justice provides for a five (5) year statute of limitations on such offenses.

2. Subsections 2241(c) and 7(3) provide, respectively, that:

(c) With Children.—Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

18 U.S.C. § 2241(c) (2008).

The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes: . . .

. . .

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3) (2008).

ecuting the Defendant since he was still on active duty with the Air Force. The governing statute, 18 U.S.C. § 3261, (also known as the Military Extraterritorial Jurisdiction Act ("MEJA")), provides that an active duty member of the military, subject to chapter 47 of Title 10 (the Uniform Code of Military Justice), may not be prosecuted unless he ceases to be subject to the chapter. The case was dismissed without prejudice for lack of jurisdiction on May 21, 2008. Because a proper basis for jurisdiction never existed, there was no basis to arrest Defendant under the first indictment. Thus, the resulting arrest was improper and therefore cannot provide a basis for venue under this Indictment. Further, after the dismissal, Defendant did not remain in custody.

On October 24, 2008, following the dismissal of the first federal indictment, the Air Force discharged Defendant Under Other than Honorable Conditions. After his discharge, Defendant subsequently returned to his home of record in Chicago, Illinois on October 26, 2008.[3] He remained in Chicago until he traveled to North Carolina, stopping in Virginia along the way, for a child custody hearing on November 17, 2008.

On November 12, 2008, Defendant was indicted again by a Grand Jury sitting in Newport News, Virginia, with the same two (2) counts of aggravated sexual abuse of a minor, in violation of 18 United States Code, §§ 7, 2241(c).[4]

At the time this Indictment was returned, Defendant was not in Illinois. However, Defendant was in North Carolina on November 17, 2008, where he was appearing before a state court concerning an unrelated dispute. On that day, authorities in North Carolina arrested Defendant and took him before a United States Magistrate Judge in Greenville, North Carolina. Defendant was then transferred to the Eastern District of Virginia by the United States Marshal's Service, and arrived in the Eastern District of Virginia on or about December 11, 2008.

Counsel for the Defendant filed a Motion to Dismiss for lack of venue and jurisdiction and a Motion to Suppress on March 2, 2009. Following oral arguments heard by the Court on April 16, 2009, the Court denied both Motions from the Bench. The Court confirmed this ruling by an Order dated May 22, 2009.

Shortly after the ruling on the 16th day of April 2009, Defendant entered a conditional guilty plea, which the Court accepted. The Court expressed concern that the two counts of the Indictment to which Defendant pleaded guilty were exactly the same and indistinguishable to the Court. Counsel for the parties agreed that they were not in any way indistinguishable as far as they were concerned.

Before Defendant's August 10, 2009 sentencing hearing, the Court, for the first time, discovered through the presentence report, that Defendant previously had been charged for the same conduct by a United States Air Force general court-martial which was subsequently dismissed.

Concerned by the possible res judicata effect of the dismissed court-martial, the Court postponed the sentencing at the August 10, 2009 hearing in order that the Government, which caused the Court to consider not only the question of res judicata but also the question of the identical two counts of the Indictment, address these issues. Since that time, the Court became concerned about venue since it

---

3. An important matter: at all times throughout his military career, Mr. Holmes purportedly maintained residency in Illinois and listed his home of record as Chicago, Illinois.

4. The allegations and charges stated in the present indictment are completely identical to the first indictment.

relied on certain conclusions based on information which may have misled the Court. In response to the Court's concern, the parties have briefed the issues and produced additional evidence, thereby allowing the Court to consider this matter more thoroughly.

## II. ANALYSIS

### A.

At the outset, the Court notes with frustration that this case represents several problems. Indeed, it is reminded of the myth of The Hydra, where if any of her nine heads were severed, two would grow back in its place.[5] As alluded to, *supra*, these problems involve constitutional issues, res judicata, jurisdiction, venue, and procedure.

The Court begins its recitation and examination of these problems with the acknowledgment that the instant case is the third case opened against Defendant based on what may be the same set of facts with what may be the same charge. The first case was brought while he was enlisted in the United States Air Force; the second case was brought by the United States Attorney's Office while Defendant was still enlisted in the Air Force; the third, and instant, case was brought by the United States Attorney's Office once Defendant was discharged from the Air Force.

As identified, *supra*, the two-count Indictment in this case contains absolutely identical and indistinguishable language for each charge.[6] The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." This constitutional protection is implemented by the requirement of Rule 7(c)(1) that the indictment or information "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *See* 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 125 (2009).

■ The test for sufficiency of an indictment or information identifies two functions served by the pleading. By this test, an indictment or information is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).[7] This

---

5. The Hydra was eventually defeated by Hercules, who used a burning firebrand to scorch the neck stumps after each decapitation. The Court wishes it had such a firebrand.

6. The Indictment reads, in pertinent part:
   **Count One**
   The Grand Jury charges that:
   In or about the year 1999 to in or about the year 2002, within the boundaries of a territorial jurisdiction of the United States, the defendant, Darrel [sic] Walter Holmes, did knowingly engage in a sexual act, to wit, contact between the mouth and penis, with Jane Doe, a person who at that time had not attained the age of 12 years.
   (In violation of Title 18, United States Code, Section 2241(c) and 7).
   **Count Two**

The Grand Jury charges that:
In or about the year 1999 to in or about the year 2002, within the boundaries of a territorial jurisdiction of the United States, the defendant, Darrel [sic] Walter Holmes, did knowingly engage in a sexual act, to wit, contact between the mouth and penis, with Jane Doe, a person who at that time had not attained the age of 12 years.
(In violation of Title 18, United States Code, Section 2241(c) and 7).

7. Some older cases have identified a third function of the indictment, that of "inform[ing] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *United States v. Cruikshank*, 2 Otto (92 U.S.) 542, 558, 23 L.Ed. 588 (1876).

becomes somewhat important in light of the prior dismissed case.

The Court worries that the instant Indictment may not meet the sufficiency requirements because the factual bases of the two charges in the Indictment have gone undistinguished. *See United States v. Panzavecchia*, 421 F.2d 440, 440–41 (5th Cir.1970) (holding an indictment legally insufficient because it contained three identically worded counts, the only distinguishing characteristic being consecutive numbers of the counts); *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005) (granting a defendant's habeas petition on the grounds that an indictment with twenty "carbon copy" counts for each of two offenses and the prosecutor's failure to distinguish the factual bases of the charges did not provide adequate notice of the basis for the charges). The Government and, interestingly, Defendant have asserted that the Indictment is not multiplicitous and, therefore, does not trigger double jeopardy concerns. (Govt.'s Br. 7, September 21, 2009; Def's Br. 11–14, August 31, 2009). Although the Government and Defendant may be able to distinguish the facially identical counts, the undersigned has a problem doing so.

■ The Court also is concerned by the potential res judicata effect of the dismissed court martial on the instant case. As mentioned in Part I, *supra*, on July 19, 2007, the United States Air Force charged Defendant by court-martial with a criminal violation of the UCMJ. An Article 32 investigation ensued and a charge eventually was referred to a general court-martial. Defendant was charged with Sodomy, pursuant to Article 125 of the UCMJ. The statute outlines the offense as follows:

> Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

10 U.S.C. § 925.[8] The Manual for Courts–Martial sets forth the elements of the offense and includes: (2) That the act was done with a child under the age of 12. *See* Manual for Courts Martial Art. 125 (2000, 2005, 2008 eds.). The Manual for Courts–Martial has the force and effect of law, as it sets forth the regulations governing all courts-martial. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 620–21, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006)(acknowledging that the Manual for Courts–Martial sets forth the procedures governing courts-martial); *see also* Gregory E. Maggs, *Judicial Review of the Manual for Courts Martial*, 160 Mil. L. Rev. 96, 97 (1999)(observing that the Manual for Courts–Martial has been dubbed the "Bible" by the Court of Military Appeals).

Before the charge could proceed to trial, a statute of limitations argument was presented to the law officer (judge of the general court-martial). A similar question was before the Court of Appeals for the Armed Forces at the time. When that appellate court ruled that the statute of limitations applied, the Commanding General dismissed the court-martial charge against Defendant on March 13, 2008, as the expired statute of limitations provided a complete defense.[9] *See de Victoria*, 66

---

**8.** The Manual for Courts Martial offers an explanation of Article 125:

> It is unnatural carnal copulation for a person to take into that person's mouth or anus the sexual organ of another person or of an animal; or to place that person's sexual organ in the mouth or anus of another person or of an animal; or to have carnal copulation in any open-

ing of the body except the body parts, with another person; or to have carnal copulation with an animal.

Manual for Courts–Martial Art. 125.

**9.** Before Defendant's trial on the court martial, the Court of Appeals for the Armed Forces issued its opinion in *United States v. de Victoria*, 66 M.J. 67 (2008), reconsideration denied by 66 M.J. 369 (2008). That court

M.J. 67 (2008). The specific language used by the Commanding General in the Dismissal of Charge letter is important and bears repeating: "I hereby *dismiss* the Charge and Specification against MSgt Darrell W. Holmes, which alleges a violation of Article 125, UCMJ, which I referred to general court-martial on 12 Oct 07. I dismiss this Charge and its Specification *without prejudice*." (emphasis added). While the letter omits any reason for the dismissal, after the Court summoned the correspondence to and from the Commanding General, the Government admitted that the charge was dismissed because the statute of limitations had expired. (Mot. Hearing, October 13, 2009) Interestingly, however, on March 24, 2008, just one day before the scheduled trial date of March 25, 2008, the Commanding General prepared a totally separate letter of Dismissal and backdated it to read March 13, 2008, presumably to substitute it for the original letter of Dismissal. The amended, backdated letter reads: "I hereby *withdraw and dismiss* the Charge and Specification against MSgt Darrell W. Holmes, which alleges a violation of Article 125, UCMJ, which I referred to a general court-martial on 12 Oct 07. I dismiss this Charge and its Specification *without prejudice*." (emphases added). However, to this Court, it seems impossible that a charge which was once dismissed and, therefore, nonexistent, can then be later withdrawn, for that would defy logic.

That being the case, the question of whether res judicata applies arises from the pyre because the dismissal was based on the expiration of the applicable statute of limitations. A statute of limitations defense is a substantive one, and therefore, the Court admits skepticism that a dismissal based on such can be without preju-

dice. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (holding that the rules of finality, both statutory and judge made, treat a dismissal on statute of limitations grounds the same way that they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute on the merits: as a judgement on the merits) (citing *United States v. Oppenheimer*, 242 U.S. 85, 87–88, 37 S.Ct. 68, 61 L.Ed. 161 (1916)). Moreover, in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Court held that "[t]he valid final judgments of military courts, like any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits." *Id.* at 745, 95 S.Ct. 1300. Because the Air Force Commanding General recognized a substantive defense for the purpose of dismissing the charge against Defendant, there is a substantive question as to whether the original dismissal of March 13, 2008 compels the application of res judicata in this matter.

**B.**

While considering the above-mentioned concerns, the Court went back to the two counts of the Indictment which caused the Court to examine the transcripts of the venue hearing held on April 16, 2009. On May 22, 2009, the Court issued an Order denying Defendant's Motion to Dismiss for lack of venue because the Court found that Defendant's last known address was in the Eastern District of Virginia. The Court, upon reflection and investigation, realizes that it was in error. In finding that Defendant's last known residence was in the

ruled that a 2003 amendment to Article 43(b)(2) of the UCMJ extending the statute of limitations for certain child sex abuse offenses

did not apply retroactively. Therefore, the statute of limitations period provided by the applicable UCMJ provision was five (5) years.

Eastern District of Virginia, the Court wrongly relied on the belief of the United States Attorney's Office that his last known residence was in the Eastern District of Virginia. While this district may have been the last known residence to the United States Attorney's Office, it was not the last known residence to the rest of the United States Government, as the military documented his last known residence as Chicago, Illinois. The transcript from the hearing on venue held on April 16, 2009 made it clear that once Defendant was discharged on October 24, 2008, he left Virginia on October 26, 2008 and went to Chicago, Illinois where he continued to reside. It also is clear that Defendant came back through Virginia to attend a court hearing in North Carolina. On November 17, 2008, while in North Carolina, Defendant was arrested under the present Indictment, returned on November 12, 2008. Importantly, at this time, Defendant provided a Chicago, Illinois address as his residence during the pretrial services investigation. The actual report, which this Court examined, does not say that Defendant said, in response to the question of his address, "My parents' address is ——." Therefore, the Court, upon reading the transcript, realizes it was in error to rely on the belief of the United States Attorney's Office as to Defendant's last known residence without better substantiation because the testimony presented, upon reexamination, makes it clear that Defendant's last known residence to the Government was in Chicago, Illinois.

Had the Court been aware that the case was generated in an effort to try Defendant in the Eastern District of Virginia, the Court would have granted Defendant's motion, as it is clear now that venue is improper in the Eastern District of Virginia. Let the Court be clear: it admires the perseverance and desire of the prosecutor to try Defendant in the Eastern District of Virginia, for the crime to which Defendant has confessed is at best horrific. But, no matter how reprehensible Defendant's conduct may be, it does not obviate the need to adhere to the law, lest we adopt the phrase "bring the guilty man forward to try him."

### i. Venue

#### 1. Standard of Review

█ The government bears the burden of establishing, beyond a preponderance of the evidence, the propriety of venue. *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir.2001). As to crimes conducted outside of the United States, 18 U.S.C. § 3238 governs in determining the appropriate venue. The statute states the following:

> The trial of all offenses begun or committed on the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought; but if no offender . . . [is] not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender . . . or if no such residence is known the indictment may be filed in the District of Columbia.

18 U.S.C. § 3238 (2008).

#### 2. Analysis

Being that the criminal allegations occurred on an Air Force base in Japan, there is no question that Section 3238 governs venue considerations in this matter.

What would otherwise be a simple venue issue is complicated by two separate concerns: (1) the fact that Defendant was previously arrested and charged for this same offense (with those charges eventually dismissed in favor of another indictment for the same offense); and (2) the fact that Defendant was at the time of the first

indictment a service member stationed in Hampton, Virginia while he also maintained Chicago, Illinois as both his listed home of record and residency throughout the duration of his military career and thereafter.

### a. First Arrested

Under 18 U.S.C. § 3238, when the offending conduct occurs "out of the jurisdiction of any particular State or district," venue "shall be in the district in which the offender ... is arrested or is first brought...." *Id.*

█ The Fourth Circuit has held that "is arrested or is first brought" means simply "arrested;" in other words, venue lies in the district "within the United States where the offender is first restrained of his liberty in connection with the offense charged." *United States v. Erdos*, 474 F.2d 157, 160 (4th Cir.1973) (citing *United States v. Ross*, 439 F.2d 1355, 1358 (9th Cir.1971); *United States v. Provoo*, 215 F.2d 531, 537 (2d Cir.1954); *Chandler v. United States*, 171 F.2d 921, 927, 932–33 (1st Cir.1948); *Kerr v. Shine*, 136 F. 61, 63–65 (9th Cir.1905)).

█ Defendant argues that in this case, the first arrest occurred in North Carolina since Defendant is currently subject to an indictment returned November 2008. The Government, however, argues that Defendant's first arrest for the purposes of the instant venue question occurred in Virginia when he was subject to an indictment returned in March 2008, an indictment that was subsequently dismissed on May 21, 2008 for lack of jurisdiction. *See United States v. Holmes*, No. 4:08cr34 (E.D.Va. May 21, 2008) (order granting motion to dismiss).

The issue before this Court appears to be one of first impression: in a matter subject to 18 U.S.C. § 3238, does a defendant's prior arrest for the same charges under a subsequently dismissed indictment constitute a "first arrest" for purposes of venue in a criminal prosecution?

The Court answers this in the negative and finds that Defendant's first arrest for this offense occurred in North Carolina when he was arrested on November 17, 2008 under the indictment handed down on November 12, 2008 as the prior arrest was without any jurisdiction. Since there was no jurisdiction to indict him in April 2008, there was no jurisdiction to arrest him at that time.

In its Order of May 22, 2009 denying Defendant's Motion to Dismiss, the Court considered *United States v. Erdos*, 474 F.2d 157 (4th Cir.1973). In *Erdos*, the court dealt with the arrest of a defendant accused of murdering a fellow American at the U.S. Embassy in Equatorial Guinea. Upon his return to the Unites States, the defendant was first placed into custody in the Eastern District of Virginia. *Id.* at 160–61. The matter was complicated, however, by the fact that the defendant's plane first landed in Boston en route to Dulles International Airport. The court rejected the defendant's claim that venue was proper only in Boston. *Id.* at 161. The court concluded that the defendant's liberty was not impeded until he landed at Dulles Airport and was first served with the complaint and summons. *Id.* Even if not arrested at Dulles, he was ultimately arrested at Alexandria, which was also in the jurisdiction of the Eastern District of Virginia. *Id.*

*Erdos* clearly set forth the basis for establishing venue under the "first arrested" provision of § 3238: "venue shall be in the district in which the offender ... is 'arrested.'" 474 F.2d at 160. There is no doubt that Defendant was arrested in connection with the charged offense in Greenville, North Carolina. Therefore, according to *Erdos*, this provision of § 3238 cannot be the basis for finding

that the Eastern District of Virginia is a proper place of venue.

In *Provoo,* a soldier was held in custody in Maryland for sodomy charges. The Army, however, delayed trial and eventually dismissed the case when it learned that the Department of Justice was pursuing charges of treason against the defendant for crimes he allegedly committed as a prisoner of war during World War II. The Army kept Provoo in custody and transported him to New York where he was discharged and turned over to the custody of the FBI. He was then indicted and eventually convicted of treason at a trial in New York.

On appeal, the defendant argued that Maryland was the only proper venue for his treason case. The Justice Department, however, argued that venue was proper in New York, being that New York was the location of the prosecution of the treason case against the defendant.

The Second Circuit disagreed with the government and found venue to be proper in Maryland. The court determined that there could be no other reason that the Army kept the defendant in custody after the sodomy charges were dropped than to detain the defendant for his treason charges. After the previous case was dropped, the defendant's detention was solely "for the purpose of bringing him to New York for trial." *Id.* at 538. Under that reasoning, it became apparent that the location where Provoo first went into custody for the treason case was Maryland and not New York.

That is where the *Provoo* case is akin to the current prosecution against Defendant. When the United States Attorney's Office in Newport News moved to dismiss its April 2008 Indictment against Defendant, which was granted, the Government did not incarcerate him or keep him in custody. When they finally did obtain a reason to place him into custody, namely the No-

vember 2008 Indictment, they arrested Defendant in North Carolina.

Here, much like the Justice Department in *Provoo,* the Government argues that venue is proper in Virginia because that is where the sexual molestation case is being prosecuted against Defendant. In response to that argument, the Second Circuit expressed its concern over the ability of the government to hand-pick the location of its trials. The court concluded that the venue statute must be strictly construed so as to only apply where the defendant was first placed into apprehension, and not so that the place of the trial dictated where the place of the arrest occurred. "To hold otherwise would mean that the Army, acting in cooperation with the Department of Justice, can select any federal district in the United States as the place for trial of a soldier charged with . . . any . . . offense committed abroad." *Id.*

Under this reasoning, it may appear that venue is proper either in North Carolina (or the District of Columbia or Illinois) since North Carolina is the place where Defendant first went into custody under *this Indictment.* Indeed, the prosecution against him first started in the Eastern District of Virginia, but being that he was released after the dismissal of the first indictment for lack of jurisdiction, the government had to start anew in its prosecution against him. When it did, the starting point for that prosecution was North Carolina. To hold otherwise would likely violate the purpose of the venue statute which, as the court in *Provoo* pointed out, "is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest." *Id.*

Further, under *Erdos,* it is manifest that the place of Defendant's first arrest under this Indictment was North Carolina and, consequently, venue does not lay in the Eastern District of Virginia according to

this Circuit's interpretation of 18 U.S.C. § 3238.

As a parting point, the Supreme Court has ruled that, on occasion, certain leniencies can be given to procedural rules. In permitting a reindictment after two defendants had their conviction thrown out for procedural error, the Court stated that "[i]t has long been the rule that when a defendant obtains reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events." *United States v. Ewell,* 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The justification for this policy, the Court explained, is to protect societal interests, "rather than granting [defendants] immunization because of legal error at a previous trial...." *Id.*

As much as this dicta could possibly support a circumvention of the venue statute—and allow the Government to prosecute Defendant in the Eastern District of Virginia—it seems that the Supreme Court's concerns in *Ewell* do not apply to our Defendant. Ordering North Carolina as a proper venue does not grant a suspected child molester criminal immunity. Rather, it simply means that venue under this Indictment is improper. Federal prosecutors retain the means to prosecute him in North Carolina, Illinois, or the District of Columbia.

### b. Last Known Residence

■ In the alternative, the Government argues that venue lies in the Eastern District of Virginia based upon Defendant's last known residence. Indeed, the second provision of 18 U.S.C. § 3238 states that "... but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of last known residence of the offender...." The Government contends that Defendant's last known address was in the Eastern District of Virginia "as

he was stationed in Hampton, Virginia." (Resp. to Pretrial Mot. 4.)

As noted earlier, Defendant was first placed into custody for this current indictment in the Eastern District of North Carolina (Greenville, North Carolina). Under § 3238's "first arrest" provision, this would make the Eastern District of North Carolina a proper place of venue.

However, in *United States v. Layton,* 519 F.Supp. 942 (N.D.Cal.1981), the court interpreted the statute to mean that if an indictment is filed before the offender is arrested in this country, the case may be filed in the district of the offender's last known residence, thereby permitting trial to be held in the district where the indictment was filed rather than in the district where the offender is subsequently arrested or first brought. *Id.* at 943. The court went on to note that "no public policy suggests that Congress intended that venue should lie in the district where the offense was 'first brought' once an indictment has been returned in the district of his last known residence." *Id.*

In this case, taking guidance from *Layton,* the Court finds that the second clause of § 3238 applies to Defendant since the present Indictment was returned before he was arrested; thus it is proper to look at the place of his last known residence at the time of indictment to determine where such indictment would be proper. This issue provides the basis of much contention between the Government and Defendant. The Government argues that the last known residence of Defendant at the time of the November 12, 2008 Indictment was Hampton, Virginia. Defendant argues that he was not a resident of Virginia when the Indictment was returned, and was, instead, a resident of Chicago, Illinois.

To help in its determination of Defendant's last known residency, the Court held an evidentiary hearing on this issue

on April 16, 2009. In examining more closely the testimony presented at the hearing and the actual record of his first statements to pretrial services in North Carolina, it is clear to the Court that Defendant's last known residence was in Chicago, Illinois. The Court reaches this conclusion because it feels that the Government has not met its burden of establishing, beyond a preponderance of the evidence, that the last known residence of Defendant was in the Eastern District of Virginia.

The Government premised its entire residency argument on the fact that Defendant was stationed at Langley Air Force Base and on the fact that his girlfriend resided in Hampton, Virginia or Newport News, Virginia However, Defendant presented unrebutted testimony that strongly suggests that on November 12, 2008, the date the Indictment was returned, he resided in Chicago, Illinois, not in Hampton, Virginia or Newport News, Virginia.

After he was discharged from the USAF on October 24, 2008, Defendant moved back to Chicago, Illinois, his home of record. (Hearing Tr. 32, April 16, 2009). In fact, Defendant specifically testified that he was discharged on Friday, October 24, 2008 and drove home to Chicago on Sunday, October 26, 2008. (Hearing Tr. 32, April 16, 2009). In fact, Defendant did not sign his discharge papers because he was not present at Langley Air Force Base; instead, the papers were mailed to him at his address in Chicago, Illinois by the military.

Defendant further testified that he remained in Chicago, where he lived with his mother, until his arrest on November 17, 2008 in North Carolina. (Hearing Tr. 33, April 16, 2009). Defendant indicated, and the Government conceded, that the reason he was in North Carolina was to attend a child custody hearing. (Hearing Tr. 33, April 16, 2009). Additionally, on November 5, 2008, seven days before the second Indictment was handed down, Defendant renewed his Illinois drivers license; the given address on the license was the Chicago, Illinois address. Moreover, during an interview with pretrial services upon his November 17, 2008 arrest in North Carolina, Defendant gave his address as Chicago, Illinois, and in fact, that was the listed address in the "Defendant Identification" section of the pretrial services report, which was before he may have known that his residence was of any importance. (Hearing Tr., 26, 30, April 16, 2009). Defendant further indicated that if released on pretrial supervision, he desired to return to the Chicago address. (Hearing Tr., 26, April 16, 2000). In the hearing on April 16, 2009, an officer from the United States Probation Office testified that Defendant's pretrial services report indicated that he "expressed a desire to return to his *parents' residence* in Chicago." (Hearing Tr. 26, April 16, 2009)(emphasis added). However, after examining the pretrial services report at a subsequent hearing, the Court found that no where on the report does it say anything about his "parents' address". (Hearing Tr. 4, November 10, 2009). The Court found that the only address that Defendant gave was his legal address and that information may have been read into the report because of knowledge learned in some other manner.

Further, in trying to meet its burden, the Government presented testimony of FBI Agent Wright. She testified that, as a result of her investigation, she believed Defendant's last known address was in either Hampton, Virginia or Newport News, Virginia, as that is where Defendant's girlfriend lived. The Court finds it striking, however, that during the course of her investigation, Agent Wright never visited either of the two listed addresses which she thought were possible places of residences to either confirm or deny such a

fact. (Hearing Tr. 14, April 16, 2009). Agent Wright also testified that when she called the appropriate Air Force officials to inquire as to where Defendant was going after his discharge on October 24, 2008, the only address they provided was Defendant's address in Chicago, Illinois, the same address that Defendant had provided upon his November 17, 2008 arrest in North Carolina. Yet, no attempt was made to visit this address either. (Hearing Tr. 17, April 16, 2009). At the very least, the information obtained from the Air Force should have put the Government on notice that there was a probability that Defendant would be returning to Chicago, his home of record. Lacking further substantiation, the Court will not impute his girlfriend's residency in the Eastern District of Virginia to Defendant.

In sum, though the burden is not his, Defendant presented sufficient evidence to conclude, as a matter of fact, that his last known residence when charged by the November 12, 2008 Indictment was in Chicago, Illinois. In turn, the Government failed to meet its burden to establish, beyond a preponderance of the evidence, that Defendant's last known residence was in the Eastern District of Virginia. In fact, in a moment of perhaps ill-thought candor, the prosecutor admitted that she did not even know where his last known residence was: "I do not know his last known address at the time of November the 12th." (Hearing Tr. 6, April 16, 2009). The prosecutor went on to say that the last known address the Government has for Defendant is Langley Air Force Base. (Hearing Tr. 6, April 16, 2009).

The facts in this case, as recited above, point persuasively to the conclusion that Defendant's last known residence was in Chicago, Illinois, not in the Eastern District of Virginia. That the Government believed otherwise was the direct result of its failure to do its due diligence. When the Court held, on May 22, 2009, that Defendant's last known residence was either in Hampton, Virginia or Newport News, Virginia, the Court erroneously relied on the fact that Hampton, Virginia or Newport News, Virginia was the last address known to the United States Attorney's Office. However, it now realizes that just because the United States Attorney's Office believes something to be true does not make it so.

Given 1) the Government's knowledge that the original reason for Defendant's one-time residency in Hampton, Virginia was his assignment to Langley Air Force Base, 2) the Government's knowledge that Defendant was discharged nineteen days before the governing Indictment was returned, and 3) the Government's knowledge that Defendant's home of record was in Chicago, Illinois, the Government's subsequent belief that his last known residence was in the Eastern District of Virginia does not ring of good faith, and as such, does not satisfy this Court. The Court finds that the Government has not met its burden to show that venue is proper in the Eastern District of Virginia. Accordingly, the Court finds as a fact that the last known address to the United States Government was in Chicago, Illinois, as that was the address on file with the Air Force at the time of Defendant's discharge.

## III. CONCLUSION

Because Defendant was first arrested under this Indictment in North Carolina, and because the last known residence of Defendant when the Grand Jury returned this Indictment was not within the Eastern District of Virginia, this Court finds that, pursuant to 18 U.S.C. § 3238, venue for this criminal matter is not proper within the Eastern District of Virginia. For this

reason, Defendant's Motion to Dismiss for lack of venue is **GRANTED.**

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**