266 P.3d 1122

**STATE OF HAWAI'I, Respondent–Plaintiff–Appellee,**

v.

**Robert N. TOMINIKO, Petitioner–Defendant–Appellant.**

No. SCWC–29535.

Supreme Court of Hawai'i.

Aug. 26, 2011.

Craig W. Jerome, Deputy Public Defender, (James S. Tabe and Jon N. Ikenaga, Deputy Public Defenders, on the briefs) for petitioner-defendant-appellant.

Brian R. Vincent, Deputy Prosecuting Attorney, on the briefs, for respondent-plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, and DUFFY, JJ., Circuit Judge AYABE, assigned by reason of vacancy, with ACOBA, J., concurring and dissenting separately.

Opinion of the Court by
NAKAYAMA, J.

Petitioner–Defendant–Appellant Robert N. Tominiko ("Tominiko") asks us to consider whether he was lawfully detained and subsequently charged with operating a vehicle under the influence of an intoxicant. The facts presented at trial show that Tominiko was near an intersection with a gathering of people who were drinking beer and soda. Upon receipt of a complaint, a police officer arrived but did not see Tominiko drinking beer. The group dispersed, and Tominiko walked slowly to his car. The officer asked to see his identification, but Tominiko continued walking to his car and got in. When the officer asked Tominiko to exit his vehicle, Tominiko drove away slowly. The officer chased Tominiko and told him to stop driving but Tominiko drove seven feet before being stopped by a vehicle traveling in the opposite direction. The officer then caught up with Tominiko, and, while approaching Tominiko's vehicle, noticed beer bottles in Tominiko's car. Tominiko was subsequently charged in part with Operating a Vehicle Under the Influence of an Intoxicant ("OVUII") and Driving Without Motor Vehicle Insurance. The Driving Without Motor Vehicle Insurance charge contained the allegation that the conduct occurred on a public roadway, but the OVUII charge did not. The District Court of the First Circuit ("district court") convicted Tominiko of OVUII, and he appealed. In his application for writ of certiorari, Tominiko presents the following questions: 1) "Whether the [Intermediate Court of Appeals ("ICA")] gravely erred in concluding that Tominiko's conviction would not be reversed due to the insufficiency of the [OVUII] charge[;]" and 2) "Whether the ICA gravely erred in concluding that the trial court did not err in denying Tominiko's motion to suppress under the totality of the circumstances in this case." We hold that: 1) the charge was not insufficient under the liberal construction standard because, when reading the charge as a whole, it can be reasonably construed to charge a crime; and 2) Tominiko was subjected to an illegal seizure and the evidence obtained as a result of that seizure must be suppressed.

## I. BACKGROUND

### A. Factual and Procedural Background

On August 13, 2008, the State of Hawai'i ("the prosecution") charged Tominiko with: 1) OVUII in violation of Hawai'i Revised Statutes (HRS) §§ 291E–61 (a)(1) & (a)(3) (Supp.2009);[1] 2) Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for OVUII in violation of HRS § 291E–62(a)(1) & (a)(2) (2007);[2] and 3) Driving Without Motor Vehicle Insurance, in violation of HRS § 431:10C–104(a) (2005).[3] The complaint read as follows:

(08287580) On or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawaii, ROBERT TOMINIKO did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E–61(a)(1) and/or (a)(3) of the *Hawaii Revised Statutes.* ROBERT TOMINIKO is subject to sentencing as a first offender in accordance with Section 291E–61(b)(1) of the *Hawaii Revised Statutes,* and/or ROBERT TOMINIKO is subject to sentencing in accordance with Section 291E–61(b)(2) of the *Hawaii Revised Statutes,* where ROBERT TOMINIKO committed the instant offense

as a highly intoxicated driver, as a first offense.

(08287582) On or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawaii, ROBERT TOMINIKO, a person whose license and privilege to operate a vehicle had been revoked, suspended, or otherwise restricted pursuant to Section 291E–62 or to Part III of Chapter 291E or Section 291E–61, or 291E–61.5, or to Part VII or Part XIV of Chapter 286 or Section 200–81, 291–4, 291–4.4, 291–4.5, or 291–7 of the *Hawaii Revised Statutes* as those provisions were in effect on December 31, 2001, did operate or assume actual physical control of any vehicle in violation of any restrictions placed on his license, and/or while his license or privilege to operate a vehicle remained suspended or revoked, thereby committing the offense of Operating a Vehicle After License And Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of An Intoxicant in violation of Section 291E–62(a)(1) and/or (a)(2) of the *Hawaii Revised Statutes.* ROBERT TOMINIKO is subject to sentencing as a first offender in accordance with Section 291E–62(b)(1) of the *Hawaii Revised Statutes.*

(08282586) *On or about the 2nd day of August, 2008, in the City and County of Honolulu State of Hawaii, ROBERT TOMINIKO did operate or use a motor vehicle upon a public street, road, or highway of the State of Hawaii at a time when such motor vehicle was not insured under*

---

1. HRS § 291E–61 provides in relevant part:
 (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
 (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]
 * * * *
 (3) With .08 or more grams of alcohol per two hundred ten liters of breath [.]

2. HRS § 291E–62(a) provides in relevant part:
 (a) No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E–61 or 291E–61.5, or to part VII or part XIV of chap-

ter 286 or section 200–81, 291–4, 291–4.4, 291–4.5, or 291–7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:
 (1) In violation of any restrictions placed on the person's license; or
 (2) While the person's license or privilege to operate a vehicle remains suspended or revoked.

3. HRS § 431:10C–104(a) provides:
 (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

a motor vehicle insurance policy, thereby committing the offense of Driving Without Motor Vehicle Insurance, in violation of Section 431:10C–104(a) of the *Hawaii Revised Statutes*. ROBERT TOMINIKO is subject to sentencing as a first offender in accordance with Section 431:10C–117(a) of the *Hawaii Revised Statutes*.

(Some Emphasis Added.)

The latter two charges were dismissed at trial. Tominiko did not object to the charge or move to dismiss it at any point during the district court's proceedings. *State v. Tominiko*, No. 29535 at 2, 123 Hawai'i 299, 2010 WL 2637771 (App. June 30, 2010) (mem.) (lead opinion).

On December 1, 2008, Tominiko orally moved to suppress evidence because the police officer did not have reasonable suspicion to stop Tominiko.

At the hearing on the motion to suppress, Officer Antwan Stuart ("Officer Stuart") testified that he was on duty at around midnight on the night in question, when he was dispatched to investigate a report that a group of people was arguing at an intersection. When he arrived, he saw approximately fifteen or twenty people drinking beer and soda, and eating. Members of the group started picking up items, and running or walking away quickly. Tominiko started walking towards his vehicle, which was the only vehicle parked in the area. Officer Stuart asked for Tominiko's identification because Tominiko "was the only person that didn't leave in a hurry" and he was able to detain Tominiko. Officer Stuart was interested in obtaining Tominiko's identification to "investigate what was going on over there, if indeed there was a[n] argument or if there was a fight." Officer Stuart also knew that a lot of people drink in that area.

Tominiko mumbled something, kept walking, got into his car, and tried to start his car. Officer Stuart followed Tominiko to the car and asked him to exit the vehicle, but Tominiko started the car and slowly drove away. Officer Stuart chased Tominiko, and told him to stop driving. Tominiko drove about seven feet, before a vehicle coming from the opposite direction forced him to stop.

Officer Stuart approached Tominiko's window and directed his flashlight at the back seat of Tominiko's car to see if anyone else was in the car. He noticed empty forty-ounce beer bottles in Tominiko's car. He asked Tominiko to turn off the car and provide identification. Tominiko said he left his license at home, but had a state identification card.

On cross-examination, Officer Stuart testified that as he approached the intersection, he heard people talking loudly, but could not determine if there had been an argument. No one was fighting when he approached the intersection. He did not remember Tominiko having a beer bottle in his hand when he first saw Tominiko.

After the hearing, the district court denied Tominiko's motion to suppress. The district court made the following oral findings and conclusions:

My obligation is to state my essential findings on the record in a motion to suppress. My essential findings are that at approximately midnight on August 2nd, 2008, Officer Stuart was dispatched to investigate a possible argument call where 15 people are arguing at Ahonui and School Street.

He arrived on the scene. He saw a group of 15 or 20 people eating and drinking, including drinking beer. It appeared to be a social gathering. There was loud talk. He could not tell if that talk was arguing, but there was no physical fighting.

He approached defendant to investigate and what—what is going, ask for his I.D. [sic] Defendant kept going, went to a car. Officer approached [sic] and asked him out of the car [sic] so he could continue his investigation and get the I.D. Defendant ignored that request, started the car, attempted to drive away, and got blocked by another car. And he said he left his license—told the officer he left his license at home. And there were empty beer bottles in the back of the car.

Based upon that, it's my conclusion that there was reasonable suspicion for Officer Stuart to stop the defendant. A reason-

able officer in Officer Stuart's position, had reasonable suspicion to believe that there was criminal activity afoot and therefore had the right to stop defendant.

And once defendant refused to comply with his simple request for identification, the officer had the further right to pursue the defendant and stop him.

So I will deny the motion.

The district court held a stipulated facts trial. The police report was stipulated into evidence, and part of it stated:

> Upon arrival, I observed a green Isuzu Trooper bearing Hawaii license plate [* * * * * *] parked on the right side of Ahonui St. about 20 feet from N. School St. Standing around the vehicle were about 12 male [sic] eating and drinking. As I parked behind the Isuzu, everyone started to run and walk away. I told one male who was trying to get inside the Isuzu to stop and show me some identification. The male got inside the Isuzu started it up and put the vehicle in drive. I yelled at the male to turn off the vehicle and show me his identification. The male started driving off slowly. I ran up to the driver door and told the male to stop the car and turn off the engine. The male continued driving for about another 7 feet when he had to stop, due to another vehicle traveling in the opposite direction which had to stop in front of his car due to traffic congestion. I again told the male to turn off the vehicle and show me his identification. I could see two empty 40oz bottles of Old English sitting on top of the back seat directly behind the driver.

A breath test was also administered to Tominiko, and the result was .160. Tominiko was found guilty of OVUII, but found not guilty as a highly intoxicated driver.

## B. The ICA's June 30, 2010 Memorandum Opinion

### 1. *Lead opinion*

Tominiko subsequently appealed his conviction, asserting that: 1) "The prosecution's written and oral charges for OVUII were fatally insufficient because they failed to allege the essential element that Tominiko op-erated or assumed actual physical control of a vehicle 'upon a public way, street, road, or highway[;]' " and 2) "The district court erred when it denied a motion to suppress, because under the totality of the circumstances the stop of Tominiko was not justified by specific and articulable facts that Tominiko was engaged in criminal activity." *Tominiko*, mem. op. at 1. The ICA issued three opinions on this matter.

The lead opinion held that the prosecution's charges were not insufficient. It observed that, in *State v. Wheeler*, this court stated:

> [T]his court has *applied different principles depending on whether or not an objection was timely raised in the trial court.* Under the *"Motta/Wells* post-conviction liberal construction rule," we liberally construe charges challenged for the first time on appeal. . . . Under this approach, there is a "presumption of validity," . . . for charges challenged subsequent to a conviction. In those circumstances, this court will "not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime." . . . However, the rule does not apply when reviewing timely motions challenging the sufficiency of an indictment.

*Id.* at 4 (quoting *State v. Wheeler*, 121 Hawai'i 383, 399–400, 219 P.3d 1170, 1186–87 (2009)).

Applying the *Motta/Wells* liberal construction standard, the lead opinion held that Tominiko's conviction was not insufficient. *Id.* at 7. It observed that under the *Motta/Wells* standard, Tominiko was required to prove either prejudice or that the charge cannot within reason be construed to charge a crime and held that Tominiko did not make either showing. *Id.* at 5.

With respect to prejudice, the lead opinion observed that Tominiko did not assert prejudice, but instead argued that he did not need to show prejudice. *Id.* It held that prejudice is a factor under the liberal construction standard, and Tominiko had failed to show prejudice. *Id.*

With respect to the failure to charge a crime, the lead opinion held that "it is proper to 'consider other information in addition to the charge that may have been provided to the defendant during the course of the case up until the time defendant objected to the sufficiency of the charges against him.' " *Id.* (quoting *Wheeler*, 121 Hawai'i at 396, 219 P.3d at 1183). It observed that the third paragraph of the complaint charges Tominiko with Driving Without Motor Vehicle Insurance on the day of the incident and alleges that Tominiko "did operate or use a motor vehicle upon a public street, road, or highway of the State of Hawai'i." *Id.* at 6 (internal quotation marks omitted). It held that "[b]ecause each of these paragraphs state that the events occurred '[o]n or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawai'i,' it is reasonable to construe that they arise from the same event." *Id.*

The lead opinion also held that from "the stipulated facts in the police report, it can be reasonably construed that the OVUII offense occurred on a public street or road." *Id.* For instance, it observed that the police report stipulated into evidence states that the place of offense is "AHONUI ST/N. SCHOOL ST HONOLULU, HI 96819." *Id.* Additionally, the "police report also states that the vehicle operated by Tominiko was 'parked on the right side of Ahonui St. about 20 feet from N. School St.', and that while being asked for his identification Tominiko got in his car, started to drive off slowly, but 'had to stop, due to another vehicle traveling in the opposite direction which had to stop in front of his car due to traffic congestion.' " *Id.* Thus, the lead opinion held that under the liberal construction standard, the charge could be reasonably construed to charge a crime. *Id.* at 6–7.

With respect to Tominiko's second point of error, the lead opinion held that Tominiko was seized "when Officer Stuart followed Tominiko to his vehicle, asked him to get out and, as Tominiko started to drive away, Officer Stuart yelled at Tominiko to stop." *Id.* at 10. However, it held that "[n]otwithstanding that a seizure did occur, Officer Stuart had reasonable suspicion sufficient to support an investigatory stop." *Id.* It observed that

"there had been the call to police of about 15 people arguing at that location; Tominiko was among the group of individuals at that location; it was midnight; the group was standing around the Isuzu Trooper that Tominiko would attempt to drive away; the vehicle and the group were located by the intersection of two public streets; some members of the group were observed talking loudly and drinking beer; and this was an area where Officer Stuart knew people liked to drink." *Id.* at 11. It held that based "on the totality of the circumstances at this point, there are specific and articulable facts to support reasonable suspicion of criminal activity afoot, including disorderly conduct and possession of unsealed containers of intoxicating liquor on a public street." *Id.* (footnote omitted). It also held that "combined with the facts set forth above and under the circumstances of this case, Tominiko's effort to leave the scene was an added factor supporting reasonable suspicion." *Id.* at 12.

Finally, the lead opinion held that "even if there was an improper seizure at the point Officer Stuart asked Tominiko to exit or to stop his car, there were no fruits from such seizure" because Tominiko drove away from Officer Stuart and was forced to stop by another vehicle. *Id.* at 13. At that point, Officer Stuart noticed the empty beer bottles. *Id.* The district court's December 1, 2008, judgment was therefore affirmed. *Id.* at 14.

### 2. *Concurring opinion*

The concurrence "agree[d] with the lead opinion that under the 'liberal construction' standard for post-trial challenges to the sufficiency of a charge, the charge against [Tominiko] for operating a vehicle under the influence of an intoxicant ... was sufficient." *Tominiko*, concurring op. at 1 (Nakamura, C.J., concurring). The concurrence would have held that although "the OVUII charge set forth in the complaint failed to allege that Tominiko operated his vehicle 'upon a public, way, street, road, or highway,' the missing 'public road' allegation was supplied by a companion charge in the complaint for driving without insurance." *Id.* The concurring opinion observed that in "*State v. Elliott*, 77

Hawai'i 309, 312, 884 P.2d 372, 375 (1994), the Hawai'i Supreme Court, applying the liberal construction standard, concluded that one way in which a otherwise deficient count can be reasonably construed to charge a crime is by examining companion counts with which the defendant was charged." *Id.* Based on that analysis, the concurrence concluded that, under the liberal construction standard, Tominiko's OVUII charge was sufficient to charge a crime. *Id.* at 7.

With respect to Tominiko's motion to suppress, the concurrence would have held that Tominiko was seized at the initial stop and Officer Stuart did not have reasonable suspicion to stop or detain him at that point. *Id.* at 7–8. The concurrence would have held that no fruit came of Officer Stuart's illegal search because Tominiko did not comply with his request to get out of the car. *Id.* at 8.

The concurrence observed that it wasn't until after Tominiko traveled a short distance and he was forced to stop by an oncoming car that Officer Stuart noticed beer bottles in the back of his car. *Id.* The concurring opinion would have held that this "observation gave Officer Stuart probable cause to believe that Tominiko had an open container of intoxicating liquor in his car, in violation of Hawaii Revised Statutes (HRS) § 291–3.3 (2007)." *Id.* It would have also held that Officer Stuart's search was lawful because he "acquired probable cause to seize Tominiko based on evidence obtained independent of his initial unlawful (unsuccessful) seizure" and would have affirmed the district court's December 1, 2008, judgment. *Id.*

### 3. *Dissenting opinion*

The dissenting opinion would have vacated and remanded the case for dismissal without prejudice because the charge was defective under *State v. Wheeler,* 121 Hawai'i 383, 219 P.3d 1170 (2009) and the district court lacked subject matter jurisdiction over the case. *Tominiko,* dissenting op. at 1 (Fujise, J., dissenting) (citing *State v. Cummings,* 101 Hawai'i 139, 145, 63 P.3d 1109, 1115 (2003)).

Tominiko subsequently applied for a writ of certiorari to the ICA's July 15, 2010 Judg-

ment on Appeal filed pursuant to its June 30, 2010 Memorandum Opinion affirming the district court's judgment filed on December 1, 2008.[4]

## II. STANDARDS OF REVIEW

### A. Application For Writ Of Certiorari

■ The acceptance or rejection of an application for writ of certiorari is discretionary. HRS § 602–59(a) (Supp.2010). "In deciding whether to accept an application, this court reviews the decisions of the ICA for (1) grave errors of law or of fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decisions and whether the magnitude of such errors or inconsistencies dictate the need for further appeal." *State v. Wheeler,* 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (citing HRS § 602–59(b)).

### B. Sufficiency Of a Charge

■ "Whether an indictment sets forth all the essential elements of an offense to be charged is a question of law" reviewed under the right/wrong standard. *State v. Wells,* 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995).

### C. Motion to Suppress

■ "An appellate court reviews a ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.'" *State v. Prendergast,* 103 Hawai'i 451, 453, 83 P.3d 714, 716 (2004) (internal quotation marks omitted) (quoting *State v. Rodgers,* 99 Hawai'i 70, 72, 53 P.3d 209, 211 (2002)).

## III. DISCUSSION

### A. The OVUII Charge Was Not Insufficient Under the Liberal Construction Standard.

■ Tominiko asserts that the ICA gravely erred because the charge cannot be construed to charge an offense. In response, the prosecution asserts that under the liberal construction standard, the charge was sufficient because the driving without insurance charge alleged that the incident took place

---

4. The Honorable William Cardwell presided.

"upon a public street, road, or highway of the State of Hawaii. . . ." We hold that the charging language was not insufficient under the liberal construction standard.

▆▆▆ Neither party disputes that the liberal construction standard applies. Under the liberal construction standard, when a party raises an objection to the indictment for the first time on appeal, the indictment is liberally construed. *State v. Motta,* 66 Haw. 89, 90, 657 P.2d 1019, 1019 (1983). This standard "means we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.* at 91, 657 P.2d at 1020. This court has also recognized that one "way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole." *State v. Elliott,* 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994) (citing *State v. Schroeder,* 76 Hawai'i 517, 530, 880 P.2d 192, 205 (1994)).

Applying the foregoing standard in this case, the charge was not defective because Tominiko has not persuasively argued that he was prejudiced or that the charge failed to charge a crime. Tominiko does not assert that he was prejudiced, and therefore the critical question is whether the charge can be construed to charge a crime. As discussed below, it can.

▆▆▆ Count 3 alleged that Tominiko "did operate or use a motor vehicle upon a public street, road, or highway of the State of Hawaii. . . ." Under the liberal construction standard, two counts can be read together. *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375; *State v. Sprattling,* 99 Hawai'i 312, 319, 55 P.3d 276, 283 (2002) ("[W]e now interpret a charge as a whole, employing practical considerations and common sense.") (citing *State v. Daly,* 4 Haw.App. 52, 55, 659 P.2d 83, 85–86 (1983)). Although the OVUII charge did not allege that the conduct occurred on a public roadway, under the liberal construction standard, reading the third count with the first count renders the charge sufficient. *See State v. Johnson,* No. 28471 at 2–4, 2010 WL 3133547 (Aug. 2, 2010) (Recktenwald, J., dissenting). Because both charges refer to

operating a motor vehicle on the same day in Honolulu, Hawai'i, it can be reasonably inferred that they refer to the same incident. Therefore, the charge was not defective.

Tominiko asserts that this court has held that the operation of the vehicle on a public way, street, road, or highway is an essential element of the offense of OVUII. (Citing *State v. Wheeler,* 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009)) In *Wheeler,* this court held that, where the defendant made a timely objection to an OVUII charge, the charge was insufficient because it failed to allege the public road element of the offense. *Wheeler,* 121 Hawai'i at 396, 219 P.3d at 1183. This argument is not persuasive because *Wheeler* did not apply the liberal construction standard and the defendant was not charged with a second count alleging the public road element. *Id.* at 400, 219 P.3d at 1187 ("Thus, because Wheeler timely objected to the oral charge in the district court, the *Motta/Wells* analysis is not applicable here."). This court also held that "we do not address whether the application of [the *Motta/Wells*] analysis would require a different result in the circumstances of this case, if the objection was not timely made." *Id.* at n. 19. Therefore, *Wheeler* does not indicate that the charge was insufficient in this case because the liberal construction standard did not apply in that case.

Finally, although the Driving Without Motor Vehicle Insurance charge was dismissed prior to trial, this does not affect our conclusion that the charge was not insufficient. Tominiko did not raise any argument concerning the dismissal of the Driving Without Motor Vehicle Insurance charge before the ICA. However, even assuming arguendo that Tominiko has preserved this argument, it is not persuasive. The district court's dismissal of the third count did not alter the fact that both counts referred to the same incident, which occurred on a public roadway. Although the Driving Without Insurance charge was dismissed, the complaint, when read as a whole, apprised Tominiko that he was being charged for conduct that occurred on a public roadway. *See Wheeler,* 121 Hawai'i at 394, 219 P.3d at 1181 ("This court's analysis of charges under the Hawai'i consti-

tution has focused on whether the language actually used in the charge provides fair notice to the defendant.").[5] Therefore, the charge was not insufficient when examining it as a whole.

## B. Officer Stuart's Seizure Of Tominiko Was Unconstitutional and the ICA Gravely Erred By Affirming the District Court's Judgment.

The ICA gravely erred by affirming the district court's judgment because: 1) Officer Stuart did not have reasonable suspicion at the time he seized Tominiko; and 2) the evidence Officer Stuart obtained was a result of his unlawful seizure.

### 1. *Officer Stuart did not have reasonable suspicion to stop Tominiko.*

■ Article I, section 7 of the Hawai'i Constitution and the Fourth Amendment of the United States Constitution provide the right to be free from unreasonable searches and seizures. To determine whether a seizure is unconstitutional, this court determines: 1) whether the person was seized; and 2) whether the seizure was justified. *State v. Dawson,* 120 Hawai'i 363, 369, 205 P.3d 628, 634 (App.2009).

■ Neither party disputes the lead opinion's conclusion that Tominiko was seized at the first stop. "[A] person is seized if, given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." *State v. Kearns,* 75 Haw. 558, 566, 867 P.2d 903, 907 (1994) (citing *State v. Quino,* 74 Haw. 161,

168–73, 840 P.2d 358, 362–64 (1992)). "Whether a reasonable person would feel free to leave is determined under an objective standard that this court reviews *de novo.*" *Id.* (citing *State v. Tsukiyama,* 56 Haw. 8, 12, 525 P.2d 1099, 1102 (1974)). A "person is seized, for purposes of article I, section 7 of the Hawai'i Constitution, when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information." *Id.* at 567, 867 P.2d 903, 867 P.2d at 907.

■ In this case, Officer Stuart told Tominiko to exit his car. At a minimum, a reasonable person would not have felt free to leave when Officer Stuart asked Tominiko to exit his car, which is also demonstrated by Officer Stuart's subsequent chasing of Tominiko. Thus, Tominiko was seized when Officer Stuart told him to exit the vehicle.

■ This stop was not supported by reasonable suspicion. This court has held that "the police may temporarily detain an individual if they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot." *Kearns,* 75 Haw. at 569, 867 P.2d at 908 (citing *State v. Melear,* 63 Haw. 488, 493, 630 P.2d 619, 624 (1981)). This court has adhered to the following standard for reasonable suspicion:

> To justify an investigative stop, short of an arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from

---

5. The dissent asserts that this court cannot construe counts I and III together because count III was dismissed prior to trial. Concurring and Dissenting Opinion at 1141–42. The dissent argues that our prior cases on this issue are not determinative because those cases involved counts that were not dismissed at trial. *Id.* (citing *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375; *State v. Schroeder,* 76 Hawai'i 517, 529, 880 P.2d 192, 205 (1994)). However, neither of those cases held that counts could only be construed together if they were not dismissed prior to trial. *See Elliott,* 77 Hawai'i at 312, 884 P.2d at 375; *Schroeder,* 76 Hawai'i at 530, 880 P.2d at 205. Because the charging document, when liberally construed, provided Tominiko with notice that he was being charged with conduct that occurred on a public roadway, the charge was sufficient.

Additionally, to the extent that the dissent asserts that Hawai'i Rules of Penal Procedure Rule 7(d) requires explicit language incorporating elements from one count into another, this argument is unpersuasive because it was rejected in this court's opinion in *Schroeder. See* Concurring and Dissenting Opinion at 1142 (citing *State v. Schroeder,* 10 Haw.App. 535, 545, 880 P.2d 208, 212–13 (App.1992), *aff'd on other grounds, Schroeder,* 76 Hawai'i at 532, 880 P.2d at 207). In that opinion, this court held that a count could incorporate language from another count, even though the charging document did not contain language specifically doing so in that case. *See Schroeder,* 76 Hawai'i at 518–19, 530, 880 P.2d at 193–94, 205.

those facts, reasonably warrant that intrusion." *The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.* (Citations omitted.) *Melear*, 63 Haw. at 493, 630 P.2d at 624 (emphasis added) (quoting *State v. Barnes*, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977)).

■■■ This court evaluates the totality of the circumstances to determine whether a stop is supported by reasonable suspicion. *State v. Spillner*, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

Tominiko asserts that the lead opinion gravely erred by concluding that the initial stop was supported by reasonable suspicion because: 1) the anonymous tip "lacked sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop of Tominiko[;]" 2) the fact that Tominiko attempted to avoid confrontation with the police did not create reasonable suspicion; and 3) "the evidence used to convict Tominiko of OVUII, including evidence of empty beer bottles, was fruit or tainted evidence obtained as a result of Officer Stuart's illegal seizure of Tominiko[.]" In response, the prosecution asserts that "[g]iven the reports received by Officer Stuart of a fairly large group arguing at about midnight and Officer Stuart's own observation of alcoholic consumption by members of the group and the Petitioner and other members of the group's sudden dispersal upon Officer Stuart's arrival, Officer Stuart's initial suspicion that Petitioner and other members of the group were drinking alcohol in public in violation of Revised Ordinances of Honolulu (ROH) 40–1.2(a) (2008) and/or that members of the group may have been fighting or making unreasonable noise in violation of HRS § 711–1101(a) or (b) (2008 Supp.) was not objectively unreasonable." (Emphasis omitted.)

We hold that Officer Stuart did not have reasonable suspicion to seize Tominiko because Officer Stuart did not have evidence that Tominiko, rather than other members of his group, had committed or was about to com-

mit a crime. Hawai'i courts have held that "[b]ased upon all the circumstances, the detaining officers *must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.*" *State v. Koanui*, 3 Haw.App. 255, 258, 649 P.2d 385, 387 (App.1982) (emphasis added) (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)); *State v. Uddipa*, 3 Haw.App. 415, 418, 651 P.2d 507, 510 (App.1982) (stating that reasonable suspicion requires "that the particular individual being stopped is engaged in wrongdoing") (internal quotation marks omitted). Additionally, the United States Supreme Court has also required reasonable suspicion that the person stopped was involved in criminal activity. *Cortez*, 449 U.S. at 417–18, 101 S.Ct. 690 (citing *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Under both federal and state law, Officer Stuart needed reasonable suspicion that Tominiko was involved in criminal conduct.

Officer Stuart did not have a reasonable suspicion that Tominiko was engaged in criminal activity. Officer Stuart admitted that he did not recall seeing Tominiko drinking beer or holding a beer bottle in his hand when he approached the group. Additionally, Officer Stuart did not see Tominiko fighting or talking loud. Although a call reporting an argument was made, Officer Stuart could not determine if the group was arguing, and did not see Tominiko or anyone in the group fighting.

Other courts have held that there is no reasonable suspicion to stop an individual in similar situations. For instance, in *United States v. Williams*, the Sixth Circuit held that a police officer did not have reasonable suspicion to stop the defendant when people in the defendant's group were drinking in public and allegedly trespassing on private property. 615 F.3d 657, 667 (6th Cir.2010). The court held that "the argument for reasonable suspicion based on others' drinking and presence on [the] property is weak in light of the Supreme Court's emphasis on 'individualized suspicion of wrongdoing.' " *Id.*

(quoting *Chandler v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)); *see also State v. Regnier*, 229 Or.App. 525, 212 P.3d 1269, 1274 (2009) (holding that police officers did not have reasonable suspicion that the defendants possessed alcohol in public when members of their group were drinking). Likewise, because Officer Stuart did not observe Tominiko drinking, arguing, fighting, or making unreasonable amounts of noise, he did not have reasonable suspicion that Tominiko committed a crime.

 The call regarding fifteen people arguing also does not provide reasonable suspicion to stop Tominiko. "A forcible stop of a person suspected of criminal activity may ... be predicated upon an informer's word, provided the information carries 'enough indicia of reliability.'" *State v. Temple*, 65 Haw. 261, 270, 650 P.2d 1358, 1364 (1982) (quoting *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). This court has analyzed whether the circumstances of the stop corroborate a tip in assessing its reliability. *See State v. Ward*, 62 Haw. 459, 461–62, 617 P.2d 565, 566–67 (1980) (holding that a tip was sufficiently reliable to create reasonable suspicion where the informant had provided reliable information in the past, the substance of the tip was very specific, and the officers' observations coincided in verifiable respects with their informant's tip). Officer Stuart's observations did not confirm the substance of the tip, which asserted that the group was arguing. For instance, Officer Stuart testified that the group was having a social gathering. He testified that some people were talking loudly, but he could not discern whether the group was arguing. Furthermore, the call provided no information that Tominiko had argued or fought. Therefore, the tip was not reliable because Officer Stuart's observations did not confirm it.

 Additionally, the call to dispatch did not indicate that Tominiko had engaged in any illegal activity. The call did not single out Tominiko and did not allege that any illegal conduct took place. Because the central inquiry of the legality of an investigatory stop is whether there is a reasonable suspicion that a person was involved in illegal conduct, the call could not have provided reasonable suspicion to stop Tominiko. *See State v. Heapy*, 113 Hawai'i 283, 285, 151 P.3d 764, 766 (2007) ("It is axiomatic that reasonable suspicion to justify a stop must relate to criminal activity."); *Koanui*, 3 Haw. App. at 257–58, 649 P.2d at 387.

 Finally, Tominiko's walk to his car does not demonstrate reasonable suspicion that he committed a crime. "[T]he majority of jurisdictions which have addressed the issue of flight have held that the mere act of avoiding confrontation does not create an articulable suspicion." *Heapy*, 113 Hawai'i at 294, 151 P.3d at 775 (internal quotation marks omitted) (quoting *State v. Talbot*, 792 P.2d 489, 493–94 (Utah Ct.App.1990)). This court has held that flight from police can support a finding of probable cause. *State v. Melear*, 63 Haw. 488, 494–95, 630 P.2d 619, 625 (1981). In this case, the flight was not as inculpatory as in *Melear*. For instance, in *Melear*, the defendant ran away after the police asked him to stop and show identification. *Id.* In this case, Tominiko mumbled something, walked to his car, and attempted to start it. Officer Stuart testified that Tominiko was the only person in the crowd that did not leave in a hurry. Tominiko's walking to his car did not raise reasonable suspicion that he committed a crime.

Additionally, the lead opinion held that Tominiko's flight, in conjunction with the other circumstances, created reasonable suspicion. *Tominiko*, mem. op. at 13. However, this argument is not persuasive because the other circumstances did not provide a reasonable suspicion that Tominiko had committed a crime. *See supra* at 1132. Thus, the lead opinion gravely erred by holding that Officer Stuart had reasonable suspicion that Tominiko was engaged in criminal conduct.

2. *The ICA gravely erred because the evidence obtained was the result of Officer Stuart's unconstitutional seizure.*

The lead opinion also held that "even if there was an improper seizure at the point Officer Stuart asked Tominiko to exit or to stop his car, there were no fruits from such

seizure." *Tominiko,* mem. op. at 13. It observed that another vehicle stopped Tominiko's car and that Officer Stuart then saw the beer bottles in Tominiko's car. *Id.* The concurrence also would have held that there were no fruits or tainted evidence obtained from Officer Stuart's initial seizure of Tominiko because Tominiko drove off after being stopped by Officer Stuart, and was later stopped by another vehicle. *Tominiko,* concurring op. at 8. The concurring opinion would have held that Officer Stuart gained probable cause to believe that Tominiko had an open container in his car in violation of HRS § 291–3.3 (2007) after observing beer bottles in Tominiko's car. *Id.*

Tominiko asserts that the lead opinion and concurring opinion gravely erred because the evidence obtained by Officer Stuart was tainted evidence. Tominiko asserts that the concurring opinion adopts a test for "seizure" that this court rejected in *State v. Quino,* 74 Haw. 161, 170, 840 P.2d 358, 362 (1992) ("[W]e decline to adopt the definition of seizure employed by the United States Supreme Court in [*California v.*] *Hodari D.* [, 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)] and, instead, choose to afford greater protection to our citizens by maintaining the *Mendenhall* standard."). In *Quino,* this court described the United States Supreme Court's definition of "seizure" in *Hodari D.* as requiring "either physical force or submission to an assertion of authority." *Quino,* 74 Haw. at 169–70, 840 P.2d at 362. This court rejected the *Hodari D.* standard, and continued to adhere to the following standard to offer greater protection under article I, section 7 of the Hawai'i Constitution: "we must evaluate the totality of the circumstances and decide whether or not a reasonably prudent person would believe he was free to go." *Id.* at 170, 840 P.2d at 362 (internal quotation marks omitted) (quoting *State v. Tsukiyama,* 56 Haw. 8, 12, 525 P.2d 1099, 1102 (1974)). We hold that the evidence obtained was the result of an illegal seizure because: 1) Officer Stuart's stop was a single illegal seizure; and 2) even viewing the incident as two separate seizures, the

evidence recovered after the second seizure was the fruit of the first illegal seizure.

■ The ICA gravely erred because Officer Stuart's stop was a single illegal seizure. This court rejected *Hodari D.*'s holding that a seizure requires "either physical force or submission to an assertion of authority." *Id.* at 169–70, 840 P.2d at 362. Furthermore, some courts that have rejected *Hodari D.* have also concluded that pursuit of a person can constitute a seizure. For instance, in *Commonwealth v. Matos,* the Pennsylvania Supreme Court noted that the "issue in each of these cases is whether the pursuit by the police officer was a seizure" and held that it was. 543 Pa. 449, 672 A.2d 769, 771, 776 (1996); *see also Commonwealth v. Thibeau,* 384 Mass. 762, 429 N.E.2d 1009, 1010 (1981) ("For present purposes, a stop starts when pursuit begins."). Although this court has not held that a person is continually seized upon fleeing from police, this court's rejection of *Hodari D.* supports that conclusion. If a seizure occurs when police officers start to chase a person, a seizure continues when the person runs after disobeying a command to stop. Thus, Officer Stuart's encounter with Tominiko was a single seizure. Officer Stuart's continuing attempt to improperly seize Tominiko placed the officer in the position from which he could observe the bottles in Tominiko's car. *State v. Poaipuni,* 98 Hawai'i 387, 393, 49 P.3d 353, 359 (2002) ("Assuming, *arguendo,* that [the defendant's] father[ ] voluntarily informed the police that the [contraband was] located in the tool shed and, moreover, voluntarily consented to the search of the tool shed, the police still would not have been in a position to learn of the firearms or to discover them in the tool shed had not they executed the defective search warrant.").[6] Therefore, the circuit court erred by failing to suppress the evidence recovered as a result of that seizure.

■ Alternatively, the evidence obtained after the second stop is fruit of the poisonous tree because it was obtained as a result of the first illegal stop. This court has held

---

**6.** The situation in the instant case is distinguishable from one where a police officer attempts to improperly seize a person but observes contra-

band which the officer would have observed regardless of the attempt to seize.

that the "fruit of the poisonous tree" doctrine "prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police." *State v. Fukusaku*, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997) (internal quotation marks omitted) (quoting *State v. Medeiros*, 4 Haw.App. 248, 251 n. 4, 665 P.2d 181, 184 n. 4 (1983)). To determine whether evidence is tainted from an illegal search, this court has adhered to the following standard:

> Admissibility is determined by ascertaining whether the evidence objected to as being the 'fruit' *was discovered or became known by the exploitation of the prior illegality or by other means sufficiently distinguished as to purge the later evidence of the initial taint. Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Where the government proves that the evidence was discovered through information from an independent source or where the connection between the illegal acts and the discovery of the evidence is so attenuated that the taint has been dissipated, the evidence is not a "fruit" and, therefore, is admissible. *Wong Sun v. United States, supra.*

*Id.* (emphasis added).

This court has also stated that in "other words, the ultimate question that the fruit of the poisonous tree doctrine poses is as follows: Disregarding the prior illegality, would the police nevertheless have discovered the evidence?" *Poaipuni,* 98 Hawai'i at 393, 49 P.3d at 359.

Under the foregoing standard, the ICA gravely erred by concluding that the evidence obtained after Officer Stuart's seizure of Tominiko was not fruit of the poisonous tree because the evidence was obtained as a result of Officer Stuart's illegal seizure of Tominiko. Officer Stuart did not have reasonable suspicion to stop Tominiko, and after catching up to Tominiko, he discovered probable cause to arrest Tominiko. The evidence obtained after the initial stop is fruit of the poisonous tree because it was discovered by exploiting Officer Stuart's prior illegal seizure.

This court reached a similar conclusion in *Quino,* 74 Haw. at 168, 840 P.2d at 362. In *Quino,* the defendant was stopped after arriving at an airport. *Id.* at 165, 840 P.2d at 360. Police officers requested to pat the defendant down, and the defendant fled. *Id.* at 166, 840 P.2d at 361. During the chase, the defendant discarded drugs. *Id.* This court held that the defendant was unlawfully seized by the police officers' interrogation and that the evidence obtained after the defendant fled was inadmissible as the product of an illegal seizure. *Id.* at 168, 840 P.2d at 361–62. This court also held that it was unnecessary to decide whether the defendant was "seized" when the police officers pursued him as he ran through the airport terminal. *Id.* at 163 n. 1, 840 P.2d at 359 n. 1. As in *Quino,* the evidence in this case was the product of an illegal seizure because it came to light when Officer Stuart caught up with Tominiko after the initial unlawful stop.

*Quino* is factually distinguishable because the drugs in *Quino* were thrown while the police officers chased the defendant, while in this case, Officer Stuart caught up with Tominiko and then acquired probable cause to arrest Tominiko upon observing the bottles in his car. This distinction does not suggest that the evidence is not the product of an illegal seizure because Officer Stuart's observations resulted from his continued pursuit in an attempt to force Tominiko to comply with his unlawful seizure. Therefore, the evidence used to convict Tominiko was fruit of the poisonous tree.

## IV. CONCLUSION

Based upon the foregoing analysis, we vacate the ICA's judgment on appeal, vacate the district court's judgment, and remand for a new trial.

Concurring and Dissenting Opinion by ACOBA, J.

While I concur with the majority's analysis on the suppression issue,[1] the premier ques-

---

1. I read the majority's statement that the situation in which a "police officer attempts to improperly seize a person but observes contraband which the officer would have observed regardless of the attempt to seize[,]" majority opinion at 31 n.6, to be merely a recitation of the inevitable

tion in this case, as in every case, is whether jurisdiction exists. Inasmuch as in the absence of an allegation that operation of the vehicle was on a public way, Count I, charging Operating a Vehicle Under the Influence of an Intoxicant (OVUII), Hawai'i Revised Statutes (HRS) § 291E–61(a)(1) and/or (a)(3) (Supp. 2008),[2] cannot be viewed as charging an offense, *see State v. Wheeler*, 121 Hawai'i 383, 219 P.3d 1170 (2009),[3] and accompanying Count III cannot supply the missing element of a public way because it was dismissed prior to trial, the district court of the first circuit (the court) lacked subject matter jurisdiction to hear this case. Accordingly, I would hold that under the liberal construction standard discussed *infra*, the charge for OVUII in Count I, against Petitioner/Defendant–Appellant Robert N. Tominiko (Petitioner), was "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction [of OVUII] was had." *State v. Motta*, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983) (internal quotation marks and citation omitted).

Hence, the charge contained within it "a substantive jurisdictional defect[,]" rendering the court's December 1, 2008 judgment, convicting Petitioner of Count I, a "nullity." *State v. Cummings*, 101 Hawai'i 139, 143, 63 P.3d 1109, 1113 (2003).

### I.

On August 13, 2008, Petitioner was charged by complaint with (1) OVUII (Count I), (2) Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for OVUII, HRS 291E–62(a)(1) and/or (a)(2) (Supp. 2008)[4] (Count II), and (3) Driving Without Motor Vehicle Insurance, HRS § 431:10C–104 (a) (2005 Repl.)[5] (Count III). As to Count I, the complaint read in relevant part as follows:

> On or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawaii, [Petitioner] *did operate or assume actual physical control of a vehicle while under the influence of alcohol* in an

---

discovery rule, but which, as the majority notes, is inapplicable here. "Under the inevitable discovery exception to the exclusionary rule, evidence recovered from an otherwise illegal search is not suppressed if the evidence would have been 'inevitably discovered' by the police via lawful means." *State v. Silva*, 91 Hawai'i 111, 120, 979 P.2d 1137, 1146 (App.1999) (quoting *State v. Lopez*, 78 Hawai'i 433, 437, 896 P.2d 889, 893 (1995)). Of course, in such circumstances, the prosecution must "present clear and convincing evidence that any evidence obtained in violation of article I, section 7, would inevitably have been discovered by lawful means before such evidence may be admitted under the inevitable *discovery exception to the* exclusionary rule." *Lopez*, 78 Hawai'i at 451, 896 P.2d at 907.

2. HRS § 291E–61 provides in relevant part:
 **Operating a vehicle under the influence of an intoxicant.** (a) *A person commits the offense of operating a vehicle* under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
 (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
 ....
 (3) With .08 or more grams of alcohol per two hundred ten liters of breath [.]
 (Emphasis added.)
 HRS § 291E–1 (2007 Repl.) defines "[o]perate" in part, as "to drive or assume actual physi-

cal control of a vehicle *upon a public way, street, road, or highway ...."* (Emphasis added.)

3. In *Wheeler*, this court held that the statutory definition of the term "operate," as used in HRS § 291E–61, "establishes an attendant circumstance of the offense of OVUII, i.e., that the defendant's conduct occur 'upon a public way, street, road, or highway[,]'" and was required to be charged. 121 Hawai'i at 392, 219 P.3d at 1179 (quoting HRS § 291E–1 (Supp. 2000)).

4. HRS § 291E–62 provides in relevant part:
 **Operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant; penalties.** (a) No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted ... shall operate or assume actual physical control of any vehicle:
 (1) In violation of any restrictions placed on the person's license;
 (2) While the person's license or privilege to operate a vehicle remains suspended or revoked[.]

5. HRS § 431:10C–104(a) provides:
 **Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of [OVUII], in violation of Section 291E–61(a)(1) and/or (a)(3) of the [HRS].

(Emphasis added.) As to Count II, the complaint read in relevant part as follows:

On or about the 2nd day of August, 2008 in the City and County of Honolulu, State of Hawaii, [Petitioner], a person whose license and privilege to operate a vehicle had been revoked, suspended or otherwise restricted . . . , did operate or assume actual physical control of any vehicle in violation of any restrictions placed on his license, and/or while his license or privilege to operate a vehicle remained suspended or revoked, thereby committing the offense of Operating a Vehicle After License And Privilege Have Been Suspended or Revoked for [OVUII,] in violation of Section 291E–62(a)(1) and/or (a)(2) of the [HRS].[ 6 ]

As to Count III, the complaint read in relevant part as follows:

On or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawaii, [Petitioner] *did operate or use a motor vehicle upon a public street, road, or highway of the State of Hawaii* at a time when such motor vehicle was not insured under a motor vehicle insurance policy, thereby committing the offense of Driving Without Motor Vehicle Insurance, in violation of Section 431:10C–104(a) of the [HRS].

(Emphasis added.)

A bench trial was held on December 1, 2008. Prior to the start of trial, Petitioner orally moved to suppress all evidence sought to be admitted against him on the ground that the officer did not have reasonable suspicion to detain him. The court agreed to entertain the motion to suppress on all counts. *Before* the court considered the mo-

tion to suppress, Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) moved to nolle prosequi Count II, and also Count III based on the good faith defense. The court "dismiss[ed] Count [II] based on [Respondent's] motion" and "Count [III] based on [the] good faith defense."

Next, the court heard Petitioner's motion to suppress. At the end of the hearing on the motion to suppress, the court denied Petitioner's motion, concluding that the officer had reasonable suspicion to stop Petitioner.

Following the hearing on the motion to suppress and Counts II and III having been dismissed by the court, Petitioner was arraigned on Count I only. Petitioner was orally charged on that count as follows:

[O]n August 2nd, 2008, in the City and County of Honolulu, State of Hawai'i, *you did operate or assume actual physical control of a vehicle while under the influence of alcohol* in an amount sufficient to impair your normal mental faculties or ability to care for yourself and guard against casualty and/or operate or assume actual physical control of a vehicle with .08 or more grams of alcohol per 200 liters of breath, thereby committing the offense of [OVUII], in violation of section 291E–61 (a)(1) and/or (a)(3) of the [HRS].

(Emphasis added.) After Petitioner was orally charged, the court stated to Petitioner, "[W]e're gonna start a trial on th[e] case." Petitioner did not object to the sufficiency of the charge. At the close of trial, Petitioner was convicted of Count I. The court reiterated, "Count [II] I'll dismiss . . . based on [Respondent's] motion," "[a]nd Count [III] I'll dismiss based on [the] good faith defense."

## II.

With respect to the oral charge, Petitioner argued on appeal that "the prosecution's written and oral charges for OVUII were fatally insufficient because they failed to allege the essential element that [Petitioner]

---

6. Inasmuch as Count II does not refer to a public way, it cannot supply that missing element and is not discussed further.

operated or assumed actual physical control of a vehicle upon a public way, street, road, or highway." (Some capitalization omitted.) Inasmuch as both the complaint and oral charge failed to allege that essential element, Petitioner contended that "the [ ] court lacked jurisdiction to preside over the charge, and [Petitioner's] conviction based on the charge must be reversed."

Respondent responded that because Petitioner challenged the sufficiency of the charges for the first time on appeal, the liberal construction standard applied. According to Respondent, under that standard, "[o]ne way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole." (Citing *State v. Elliot*, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994).) Noting that Count III of the "complaint alleged that Petitioner had operated the vehicle in question 'upon a public street, road, or highway' without motor vehicle insurance[,]" Respondent asserted that "when the OVUII charge is read in the context of [Count III,] it must reasonably be construed to allege that [Petitioner's] operation of a motor vehicle occurred 'upon a public way, street, road, or highway.' "

The ICA appeal yielded three separate opinions.[7] The lead opinion stated that most of Hawai'i case law had addressed the sufficiency of a charge in terms of due process. *State v. Tominiko*, No. 29535, 2010 WL 2637771, at *1 (App. June 30, 2010) (mem.). On the other hand, the lead opinion observed that some cases had addressed it as a matter of jurisdiction. *Id.* at *1–2 (citing *Cummings*, 101 Hawai'i at 139, 63 P.3d at 1109; *Territory v. Goto*, 27 Haw. 65, 102–03 (Haw. Terr.1923)). According to the lead opinion, "[n]otwithstanding the *Cummings* decision that a defective charge undermines jurisdiction," the lead opinion maintained that *Wheeler*, 121 Hawai'i at 399–400, 219 P.3d at 1186–87, "reconfirmed the view that the *Motta* [ ] post-conviction liberal standard applies

when an objection to a defective charge is not timely raised in the trial court[,]" *Tominiko*, 2010 WL 2637771, at *2.

According to the lead opinion, under the liberal construction standard in *Motta*, "the validity of the charge is presumed and the conviction will not be reversed unless the defendant can show: [ (1) ] prejudice; or [ (2) ] that the charge cannot within reason be construed to charge a crime." *Id.* With respect to the first rationale, the lead opinion concluded that, inasmuch as Petitioner did not argue he was prejudiced in any way, Petitioner failed to make any showing of prejudice. With respect to its second rationale, the lead opinion maintained that, under the liberal construction standard, "it is proper to 'consider other information in addition to the charge that may have been provided to the defendant during the course of the case up until the time defendant objected to the sufficiency of the charges against him.' " *Id.* at *3, 657 P.2d 1019 (quoting *Wheeler*, 121 Hawai'i at 396, 219 P.3d at 1183).

According to the lead opinion, because all three counts stated that the events occurred on or about the same day in the City and County of Honolulu, it was reasonable to construe Counts I and III as having arisen from the same event, Count III indicating that the events occurred when Petitioner was driving his vehicle on a public way, street, road, or highway. *Id.* Additionally, the lead opinion pointed out that the police report, which stated that the "PLACE OF OFFENSE" for the OVUII charge was "AHONUI ST/N. SCHOOL ST HONOLULU, HI 96819[,]" was stipulated into evidence. Thus, the lead opinion concluded that based on "the information provided to [Petitioner] in the entirety of the written Complaint, as well as information in the facts stipulated for trial, the Complaint and oral charge can reasonably be construed to charge a crime."[8] *Id.*

The concurring opinion agreed that under the liberal construction approach, the OVUII

---

7. The opinion authored by Judge Ginoza is referred to as the "lead opinion," the opinion authored by Chief Judge Nakamura is referred to as the "concurring opinion" and the dissent authored by Judge Fujise is referred to as the "dissenting opinion."

8. With all due respect, in my view the separate functions of a charge discussed *infra* are to state a charge *and* to inform the accused of the nature of the accusation, and information outside of the charge may be considered only with respect to the latter function.

charge could be construed with Count III under *Elliot,* and that Count III did supply the missing element in the OVUII charge. *See id.* at *11–12, 884 P.2d 372 (Nakamura, C.J., concurring). Notably, the concurring opinion did not consider the contents of the police report in construing the charge. It did determine, however, that because "[t]here was undisputed evidence that [Petitioner] drove his car in Honolulu on Ahonui Street, a public street or road[,]" Petitioner "did not meet his burden, under the liberal construction standard, of showing that he was prejudiced by the failure of the OVUII charge to specifically allege the public road requirement." *Id.* at *12, 884 P.2d 372.

Finally, the dissenting opinion "believe[d] the charge in this case [was] fatally defective under [*Wheeler* ] and the district court lacked subject matter jurisdiction ·over the case[.]" *Id.* at *13, 219 P.3d 1170 (Fujise, J., dissenting) (citing *Cummings,* 101 Hawai'i at 145, 63 P.3d at 1115). Based on that determination, the dissenting opinion "would [have] vacate[d] and remand[ed] th[e] case for dismissal without prejudice." *Id.*

None of the opinions took note of the fact that Counts II and III had been dismissed before trial, and Petitioner was arraigned only on Count I.

## III.

On October 13, 2010, Petitioner filed an application for writ of certiorari (Application). The first question Petitioner presented in his Application is "[w]hether the ICA gravely erred in concluding that [Petitioner's] conviction [should] not be reversed due to the insufficiency of the [OVUII] charge[.]" Respondent filed a Response to Petitioner's Application on October 27, 2010. Both Petitioner and Respondent raised the same arguments with respect to the oral charge that were raised on appeal to the ICA.

## IV.

There appear to be two primary, yet distinct, functions of a charge. First, because "[t]he criminal process begins when the accused is charged with a criminal offense[,]" *State v. Sprattling,* 99 Hawai'i 312, 317, 55 P.3d 276, 281 (2002), a charge must state an offense in order to establish that the court has jurisdiction over the case. *See Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 ("[A]n oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity."); *see also State v. Israel,* 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (stating that an "omission of an essential element of the crime charged is a defect in substance rather than of form" (quoting *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)))); *Territory v. Gora,* 37 Haw. 1, 6 (Haw.Terr.1944) (referring to an alleged failure of the charge to state an offense as a "jurisdictional point"); *Goto,* 27 Haw. at 102 (Peters, C.J., concurring) ("Failure of an indictment to·state facts sufficient to constitute an offense against the law is jurisdictional and is available to the defendant at any time."); HRS § 806–34 (1993) (stating that, in an indictment, "the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed," all of which "are necessary to ... show that the court has jurisdiction, and to give the accused reasonable notice of the facts").

Second, both the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution provide that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" *See State v. Corder,* 121 Hawai'i 451, 458, 220 P.3d 1032, 1039 (2009) (stating that because the "accused shall enjoy the right to be informed of the nature and cause of the accusation[,] ... a charge must be in a legally sufficient form which correctly advises the defendant about the allegations against him or her") (internal quotation marks, citations, and some ellipsis omitted); *State v. Stan's Contracting, Inc.,* 111 Hawai'i 17, 31, 137 P.3d 331, 345 (2006) (stating that HRS § 806–34, which sets forth what an indictment must include, "is grounded in article I,

section 14 of the Hawai'i Constitution, which requires that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation'" (brackets and ellipsis in original)); *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282 (stating that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation" (brackets in original)) (internal quotation marks and citation omitted); *accord Israel,* 78 Hawai'i at 70, 890 P.2d at 307; *see also* HRS § 806–34 (accused must have reasonable notice of the fact). Thus, a charge must state an offense as a jurisdictional prerequisite *and* inform the defendant of the nature and cause of the accusation against him or her as a constitutional requirement. *See Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 ("Not only does [the charge] fail to state an offense, *but it also* fails to meet the requirement that an accused must be informed of the nature and cause of the accusation against him.") (Internal quotation marks and citation omitted.) (Emphasis added.)

## V.

In determining whether a charge is sufficient for purposes of jurisdiction, we must look to the charge itself. Because the foregoing inquiry is not a question of whether a defendant had adequate notice of the charges against him or her, other information beyond the charge that may have been supplied to the defendant is irrelevant. *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (stating that "a defect in a complaint is not one of mere form, which is waivable, *nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her,*" but the defect "is *one of substantive subject matter jurisdiction, 'which may not be waived or dispensed with'*" (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244)) (emphases added).

Contrastingly, as to the sufficiency of the charge in terms of the constitutional right to be informed of the nature and cause of the accusation against him or her, we may look beyond the four corners of the charge itself.

*See, e.g., Wheeler,* 121 Hawai'i at 396, 219 P.3d at 1183 (stating that, because the defendant "immediately objected to the sufficiency of the State's oral charge[,] ... this court may only consider information supplied to [the defendant] prior to his timely, pre-trial objection in determining whether his right to be informed of the nature and cause of the accusation against him has been violated"); *State v. Treat,* 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) (concluding that grand jury transcripts fully informed the defendant of the nature and cause of the accusation against him). In other words,

in determining whether the accused's right to be informed of the nature and cause of the accusation against him [or her] has been violated, we must look to all of the information supplied to him [or her] by the State to the point where the court passes upon the contention that the right has been violated.

*Israel,* 78 Hawai'i at 70, 890 P.2d at 307 (brackets in original) (internal quotation marks and citations omitted); *see also Treat,* 67 Haw. at 120, 680 P.2d at 251 (stating that, in deciding whether a defendant's " 'right to be informed of the nature and cause of the accusation against him has been violated, we must look to all of the information supplied to him by the State to the point where the court passes upon the contention that his right has been violated' " (quoting *State v. Robins,* 66 Haw. 312, 317, 660 P.2d 39, 42–43 (1983))). Thus, "if a defendant actually knows the charges against him or her, that defendant's constitutional right to be informed of the nature and cause of the accusation is satisfied[.]" *Israel,* 78 Hawai'i at 71, 890 P.2d at 308 (citing *State v. Tuua,* 3 Haw.App. 287, 292, 649 P.2d 1180, 1184 (1982)); *see also State v. Hitchcock,* 123 Hawai'i 369, 379, 235 P.3d 365, 375 (2010) (stating that "a defendant's right to be informed of the nature and cause of the accusation can be deemed satisfied if the record clearly demonstrates the defendant's actual knowledge of the charges against him or her") (internal quotation marks and citation omitted).

## VI.

*Cummings* holds that an oral charge, complaint, or indictment that "*does not state an offense* contains within it a substantive jurisdictional defect[.]" 101 Hawai'i at 143, 63 P.3d at 1113 (emphasis added). But, as noted before, where the sufficiency of a charge was not raised at trial, review of the charge is governed by the liberal construction standard, under which a conviction will not be reversed "unless the defendant can show prejudice or that the [charge] cannot within reason be construed to charge a crime." *Motta,* 66 Haw. at 91, 657 P.2d at 1020. Under that standard, the complaint and oral charge in the instant case as to Count I, the OVUII charge, cannot be reasonably construed "to charge the offense for which conviction was had." *Id.* at 92, 657 P.2d at 1021 (internal quotation marks and citation omitted).

### A.

The OVUII offense as set forth in the complaint and as orally charged failed to allege that Petitioner had operated his vehicle on a public way, street, road or highway. While Respondent, the lead opinion, and the concurring opinion believed under *Elliot,* that the OVUII charge was not fatally defective because the omitted element was alleged in Count III, *Elliot* is not determinative because *Elliott* involved separate charges that could be construed together, whereas the instant case contained but one charge, Count I, OVUII, upon which Petitioner was arraigned and tried, at the time trial was commenced. In *Elliot,* Elliot was orally charged on three separate counts: (1) resisting arrest, HRS § 710–1026(1)(a) (1985),[9] (2) as-

sault against a police officer, HRS § 707–712.5 (Supp. 1992),[10] and (3) disorderly conduct, HRS § 711–1101(1)(b) (1985).[11] *Elliott,* 77 Hawai'i at 309–10, 884 P.2d at 372–73. The charges stemmed from an incident during which Officer Paula Watai (Officer Watai) had attempted to place Elliot under arrest, at which time Officer Belinda Kahiwa (Officer Kahiwa) came to her assistance.

With respect to the resisting arrest count, it was alleged Elliot "*attempted to prevent a Peace Officer acting under color of his official authority* from effecting an arrest ... [,] committing the offense of resisting arrest[.]" *Id.* at 310, 884 P.2d at 373 (some emphasis in original and some added) (brackets omitted). With respect to the assault against a police officer count, it was alleged Elliot "*caused bodily injury to Officer Belinda Kahiwa* by ... assault of police office [sic]...." *Id.* (some emphasis in original and some added) (some brackets omitted and some in original). On appeal, Elliot argued, *inter alia* that the assault against a police officer charge was defective because it "failed to allege that the assault was against 'a police officer who was engaged in the performance of duty.'" *Id.* at 311, 884 P.2d at 374.

This court applied the liberal construction standard because Elliot failed to challenge the sufficiency of the charges at trial. *See id.* It was explained that under that standard, "[o]ne way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole." *Id.* at 312, 884 P.2d at 375. Thus, if it were clear that the "Peace Officer" in the first count (resisting arrest) referred to the officer mentioned by name in the second count (assault), the assault against a police officer charge would be suffi-

---

9. At the time, HRS § 707–712.5(1)(a) provided in pertinent part:

> **Resisting arrest.** (1) A person commits the offense of resisting arrest if he *intentionally prevents* a peace officer acting under color of his official authority from effecting an arrest by:
> (a) Using or threatening to use physical force against the peace officer or another [.]

*Elliott,* 77 Hawai'i at 310 n. 2, 884 P.2d at 373 n. 2 (brackets and emphasis in original).

10. At the time, HRS § 707–712.5 provided in relevant part:

> **Assault against a police officer.** (1) A person commits the offense of assault against a police officer if the person:
> (a) Intentionally, knowingly, or recklessly causes bodily injury to *a police officer who is engaged in the performance of duty* [.]

*Id.* at 310 n. 3, 884 P.2d at 373 n. 3 (brackets and emphasis in original).

11. The disorderly conduct was not challenged in the State's application and therefore, that charge was not relevant to the appeal. *See id.* at 310 n. 1, 884 P.2d at 373 n. 1.

cient. *Id.* However, because it was not evident that this was the case under the language of the charges, "the assault against a police officer conviction [had to] be reversed." *Id.* at 313, 884 P.2d at 376.

Consequently, *Elliot* is not determinative because, as previously recounted, in the instant case, Counts II and III were dismissed *before* trial began and Petitioner was orally arraigned prior to trial solely on Count I. Contrastingly, in *Elliott*, the possibility of supplying the missing element existed because both counts were actually tried. In the instant case, Count III was not available to supply the missing public way element in Count I because it had been dismissed. Only Count I—the defective count—went to trial.

### B.

*Elliot* cited to *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994) [hereinafter *Schroeder II* ], *affirming State v. Schroder*, 10 Haw.App. 535, 880 P.2d 208 (1992) [hereinafter *Schroder I* ]. *Elliot*, 77 Hawai'i at 312, 884 P.2d at 375. In *Schroeder II*, 76 Hawai'i at 518–19, 880 P.2d at 193–94, an Oahu grand jury returned a two-count indictment charging Schroeder with Robbery in the First Degree, HRS § 708–840(1)(b)(ii),[12] and Kidnapping,[13] HRS § 707–720(1)(c). Both counts alleged the events took place on April 13, 1985, in Honolulu, Hawai'i. *See id.* On appeal, this court considered, among other things, whether the ICA correctly vacated the court's imposition, *sua sponte*, of two mandatory prison terms of ten years' for the Kidnapping count, as opposed to one mandatory term, on the ground that the kidnapping charge failed to allege the aggravating cir-

cumstance, i.e. the use of a handgun, in violation of *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987).[14] *Schroeder II*, 76 Hawai'i at 529, 880 P.2d at 205. *Schroeder II* concluded that although the Kidnapping count did not allege the use of a handgun, the Robbery count did. *Id.* Thus, viewing the indictment as a whole, the aggravating circumstance necessary for the court to impose an additional mandatory term in connection with the Kidnapping count had been alleged. *Id.*

In *Schroeder II*, as in *Elliot*, Schroeder had been indicted, tried, and convicted on two counts. Thus, those counts could be construed with reference to one another. Again, *Schroeder II* is inapposite because in this case there were no other counts with which Count I could be construed inasmuch as Count III was dismissed prior to trial and Petitioner was orally charged on Count I alone.

### VII.

Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d) provides in part that "[a]llegations made in one count may be incorporated by reference in another count." However, if one count does not contain language incorporating or referring to another count, it cannot be deemed to have incorporated that other count by reference. *See Schroeder I*, 10 Haw.App. at 545, 880 P.2d at 212–13 ("We reject the State's argument that the allegation in Count I that a gun was used in the robbery can be deemed as incorporated by reference in Count II pursuant to Rule 7(d), [HRPP] (1983)" since "Count II contains no

---

**12.** HRS § 708–840 (1985) provided in relevant part:

> **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:
> (b) [The person] is armed with a dangerous instrument and ... threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.
> (2) As used in this section, "dangerous instrument" means any firearm.

*Schroeder II,* 76 Hawai'i at 519 n. 1, 880 P.2d at 194 n. 1.

**13.** HRS § 707–720 (1985) provided in relevant part:

> **Kidnapping.** (1) A person commits the offense of kidnapping if [the person] intentionally restrains another person with intent to:
> . . . .
> (c) Facilitate the commission of a felony or flight thereafter[.]

*Id.* at 519 n. 2, 880 P.2d at 194 n. 2.

**14.** *Estrada,* 69 Haw. at 229, 738 P.2d at 829, held that any aggravating circumstance, which, if proved, would result in the application of enhanced sentencing under HRS § 706–606.1, must be included in the indictment.

language incorporating or referring to Count I.").

Here, Count III was the only count of the three original counts that could be construed to have alleged that Petitioner operated his vehicle on a public way, street, road, or highway, as should have been alleged under Count I. However, nothing in Count I may be construed to have incorporated the allegations under Count III. Count III could not have been incorporated by reference inasmuch as it was dismissed prior to trial. Thus, Count I, standing alone, cannot be reasonably construed to charge the crime of OUVII. *See Wheeler,* 121 Hawai'i at 392, 219 P.3d at 1179.

## VIII.

The majority maintains that because Counts I and III "refer to operating a motor vehicle on the same day in Honolulu, Hawai'i, it can be reasonably inferred that they refer to the same incident[,]" majority opinion at 18, and, thus, "the charge was not defective[,]" *id.* Although the majority concedes that Count III "was dismissed prior to trial," *id.* at 19, 219 P.3d 1170, it maintains that Petitioner "did not raise any argument concerning the dismissal[,]" *id.,* and "assum[es] arguendo" that such an argument was "preserved[,]" *id.*

### A.

Respectfully, the majority erroneously "assum[es]" that Petitioner had to have raised the argument before the court to "preserve[ ]" it on appeal. But the lack of subject matter jurisdiction is not an issue that must be "preserved." It is established that, "under Hawai'i precedent, the sufficiency of a charge is regarded as " 'jurisdictional.' " *State v. Bryan,* 124 Hawai'i 404, 410, 245 P.3d 477, 483 (App.2011) (quoting *Cummings,* 101 Hawai'i at 142–43, 63 P.3d at 1112–13). "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (internal quotation marks and citation omitted). "In other words, [to reiterate,] an oral charge, complaint, or indict-ment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity." *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112; *see State v. Morin,* 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990) (stating that, while "a guilty plea made voluntarily and intelligently precludes a defendant from later asserting any nonjurisdictional claims, ... the defendant may still challenge the sufficiency of the indictment or other like defects bearing directly upon the government's authority to compel the defendant to answer to charges in court") (citations omitted). Because Count III was dismissed, the charge in Count I was insufficient to charge an offense.

In that regard, it is well-established that challenges involving a court's jurisdiction, such as to the insufficiency of a charge, need not be preserved by the parties. The requirement that the charge be sufficient "may not be waived or dispensed with, and the defect is ground for reversal, even when raised for the first time on appeal." *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (internal quotation marks and citations omitted). The "[f]ailure of an indictment ... to constitute an offense against the law is jurisdictional and is available to the defendant at any time." *Territory v. Goto,* 27 Haw. 65, 102 (Haw.Terr.1923) (Peters, C.J., concurring). Thus, questions of "substantive subject matter jurisdiction ... may not be waived or dispensed with[.]" *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (internal quotation marks and citation omitted); *see also State v. Miyahira,* 98 Hawai'i 287, 290, 47 P.3d 754, 757 (App.2002) (stating that an "objection for want of jurisdiction" cannot be denied appellate review merely because the issue was "raised ... for the first time on appeal") (internal quotation marks and citation omitted). Hence, the majority plainly contravenes our precedent in indicating that Petitioner had to have "preserve[d]" the insufficiency of the charge.

### B.

Moreover, separate and apart from the waiver issue, we as an appellate court, must

independently ascertain that jurisdiction in a case exists. With respect to questions involving jurisdiction, "[a]n appellate court has . . . an independent obligation to ensure jurisdiction over each case and to *dismiss the appeal sua sponte if a jurisdictional defect exits.*" *State v. Graybeard,* 93 Hawaiʻi 513, 516, 6 P.3d 385, 388 (App.2000) (emphasis added); *see Ditto v. McCurdy,* 103 Hawaiʻi 153, 157, 80 P.3d 974, 978 (2003) ("[I]t is well settled that an appellate court is under an obligation to ensure that it has jurisdiction to hear and determine each case and to dismiss an appeal on its own motion where it concludes it lacks jurisdiction."); *see also State v. Moniz,* 69 Haw. 370, 372, 742 P.2d 373, 375 (1987) ("Although the matter of jurisdiction was not raised by the parties, appellate courts are under an obligation to insure that they have jurisdiction to hear and determine each case."). Hence, contrary to the majority's implicit position, it is irrelevant whether "the parties d[id or did] not raise the issue of jurisdiction[ ]" at this level or at the courts below, *In re Doe,* 107 Hawaiʻi 12, 15, 108 P.3d 966, 969 (2005), insofar as it is this court's obligation to ensure jurisdiction exists.

Nevertheless, the majority maintains that "[a]lthough [Count III] was dismissed, [the OVUII charge (Count I) ], when read as a whole, apprised [Petitioner] that he was being charged for conduct that occurred on a public roadway." Majority opinion at 19 (citing *Wheeler,* 121 Hawaiʻi at 394, 219 P.3d at 1181 ("This court's analysis of charges under the Hawaiʻi constitution has focused on whether the language actually used in the

charge provides *fair notice* to the defendant.")) (Emphasis added.).[15] But, to reiterate, "a defect in a complaint is not . . . simply one of notice," but "one of substantive subject matter jurisdiction[.]" *Cummings,* 101 Hawaiʻi at 143, 630 P.3d at 1113 (internal quotation marks and citation omitted).

Even under the liberal construction standard, "by no reasonable construction can [Count I] be said to charge the offense for which conviction was had." *Motta,* 66 Haw. at 94, 657 P.2d at 1022 (internal quotation marks and citation omitted). Here "conviction was had" for operating a vehicle under the influence of an intoxicant "upon a public way." HRS § 291E-61, HRS § 291E-1. Nothing can be discerned in Count I that can be construed reasonably as charging that the vehicle was operated only on a public way. Indeed, Respondent did not contend that Count I alone could reasonably be construed as the OVUII offense, but maintained only that the charge in Count I would be sufficient if construed with Count III, impliedly agreeing, as would seem evident, that Count I alone could not be read to charge an offense for which the conviction in this case was had. *Cf. State v. Rodrigues,* 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985) (noting that, because the prosecution offered only one theory, this court would not review new, alternative theories on appeal).

Nevertheless, the majority insists that Count III can be read together with Count I, despite the dismissal of Count III. Majority opinion at 17–18 (distinguishing *Wheeler* ).[16]

---

**15.** By relying on *Wheeler* and emphasizing throughout the opinion that Petitioner was "apprised" that he was "charged for conduct that occurred on a public roadway[,]" majority opinion at 19, *see* also *id.* at 19 n. 5, 219 P.3d 1170 (noting that the charging document provided Petitioner with notice), the majority ignores the fact that a court has jurisdiction only when the charge states all the elements of an offense. *See Cummings,* 101 Hawaiʻi at 143, 63 P.3d at 1113 (stating that "a defect in a complaint is not one of mere form, which is waivable, *nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her,*" but the defect "*is one of substantive subject matter jurisdiction, which may not be waived or dispensed with*") (internal quotation marks and citation omitted) (emphases added). To reiterate, contrary to the majority, whether Petitioner had "notice" of the

charge is not at issue, but what is, is whether the court had subject matter jurisdiction.

**16.** In any event, the majority's attempt to distinguish *Wheeler* is "not persuasive" insofar as there, this court, "consider[ing] information supplied to [the defendant,]" 121 Hawaiʻi at 396, 219 P.3d at 1183, consisting of the "record[,]" the charge, and the defendant's presence at Administrative Drivers License Revocation Office proceedings, did "not establish that [the defendant] was in fact fully informed of the nature and cause of the accusation against him[.]" (Internal quotation marks and citation omitted). If the entire record did not provide the defendant with notice of the charge in *Wheeler,* then it cannot be maintained, as the majority appears to do, that a complaint containing one count can give a court jurisdiction over the proceeding by referring to dismissed counts.

Respectfully, the majority fails to explain how, under the liberal construction standard, it is "within reason[,]" *Motta*, 66 Haw. at 91, 657 P.2d at 1020, to supply the defective Count I with an "essential element" by referring to the dismissed Count III that was nonexistent at the time Petitioner was arraigned.

The majority asserts that neither *Elliot* nor *Schroeder II* held that counts "could only be construed together if they were not dismissed prior to trial." Majority opinion at 19 n.5. But nothing in those cases implies or suggests that a count dismissed prior to trial and prior to arraignment can be used to remedy a defective count on which the defendant was arraigned. To reiterate, each defendant in *Elliott* and *Schroeder II* was charged with more than one count, convicted on those counts, and on appeal, this court determined whether those counts could be referred to each other to remedy a purported defect in one count. *Elliott*, 77 Hawai'i at 309, 884 P.2d at 372 (stating that the defendant was charged with and convicted of resisting arrest, assault against a police officer, and disorderly conduct); *Schroeder II*, 76 Hawai'i at 519, 880 P.2d at 194 (noting that the defendant was charged with and convicted of robbery in the first degree and kidnapping). Inasmuch as *Elliott* and *Schroeder II* involved this court's *in pari materia* reading of counts for which the defendant was charged and convicted, they plainly do not suggest, as the majority implies, that a charge dismissed prior to trial can be used to supply a missing element in an offense for which the defendant was charged and convicted in a count.

It would appear axiomatic that Count I cannot be "construed" with Count III, which was dismissed. When a charge is dismissed, it can no longer be utilized by the factfinder or a court. *See United States v. Holmes*, 672 F.Supp.2d 739, 745 (E.D.Va.2009) ("[I]t seems impossible that a charge which was once dismissed and, therefore, nonexistent, can then be later withdrawn, for that would

defy logic."); *People v. Harvey*, 25 Cal.3d 754, 159 Cal.Rptr. 696, 602 P.2d 396, 398 (Cal.1979) (noting that where count III was dismissed in consideration for the defendant's guilty plea to counts I and II, "it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence"); *State v. Johnson*, No. 18703, 2011 WL 2685606, at *6 (Conn. July 19, 2011) ("[T]he trial court's dismissal of the misdemeanor charges had the effect of immediately and permanently barring the state from prosecuting those charges."). Obviously, if a charge is dismissed, it can no longer be "construed" to supply a defective charge with an essential element. By establishing that a dismissed charge can supply a missing element in a remaining charge, the majority calls into question the status of dismissed charges. If a dismissed charge is utilized as the majority proposes, the effect of a dismissal of a count is unclear and ambiguous. This result has enormous consequences for criminal procedure in this state inasmuch as it abrogates our case law requiring that the elements of a charge be stated as a requirement of jurisdiction.

## IX.

Accordingly, I would hold that the OVUII charge in Count I cannot within reason be construed to charge the crime for which conviction was had. *Motta*, 66 Haw. at 91, 94, 657 P.2d at 1020, 1022. Thus, in my view, the court lacked subject matter jurisdiction over the instant case. I would vacate and remand to the court to enter an order dismissing without prejudice.